Daniel Rodriguez, Esq., SBN 096625
Joel T. Andreesen, Esq., SBN 152254
Charles R. Chapman, Esq., SBN 115505
**RODRIGUEZ & ASSOCIATES**
A Professional Law Corporation
2020 Eye Street
Bakersfield, CA 93301
Phone: (661) 323-1400   Fax: (661) 323-0132

Attorneys for Plaintiff WENDY WALSH, individually
and as Successor-in-Interest to SETH WALSH, Deceased.

**RECEIVED**

JUL - 5 2011

SUPERIOR COURT
METROPOLITAN DIVISION
COUNTY OF KERN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN

METROPOLITAN DIVISION – UNLIMITED CIVIL

| | |
|---|---|
| WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased, <br><br> Plaintiff, <br> vs. <br><br> TEHACHAPI UNIFIED SCHOOL DISTRICT; SUPERINTENDENT SWANSON; SUSAN ORTEGA; MR. KAMINSKY; MS. KIRBY; MS. HAIGHT; MRS. KABONIC; MR. FEEHAN; and DOES 1 through 100, Inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

///
///

COMPLAINT - 1

Plaintiff WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased ("Decedent"), alleges as follows:

## JURISDICTION AND VENUE

1. By this Complaint Plaintiff WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased ("Decedent"), seeks compensation for:

    (a) FIRST CAUSE OF ACTION: In her capacity as Decedent's successor in interest, for Failure to Prevent the Student-on-Student Harassment and Teacher-on-Student Harassment of Decedent on the Basis of Decedent's Sex, Gender, and Sexual Orientation, in Violation of Plaintiff's rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 – 1688, pursuant to Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (student-on-student sexual harassment), Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (teacher-on-student sexual harassment), and Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130 (9th Cir. 2003) (students' right under Title IX to be free from discrimination on the basis of sexual orientation was clearly established), against Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.

///
///
///
///
///
///

(b) SECOND CAUSE OF ACTION: In her capacity as Decedent's successor in interest, for Violation of Decedent's Rights under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and <u>Fitzgerald v. Barnstable School Committee</u>, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009), against all Defendants, in their individual capacities only, except Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.

(c) THIRD CAUSE OF ACTION: In her individual capacity, for the Violation of Defendants of Plaintiff's own rights under the First and Fourteenth Amendments to the United States Constitution to a familial relationship and companionship with Decedent, resulting in the death of Decedent and the termination of said relationship, pursuant to 42 U.S.C. §§ 1983, 1988, against all Defendants, in their individual capacities only, except Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.

(d) FOURTH CAUSE OF ACTION: In her capacity as Decedent's successor in interest, for Violation of the Sex Equity in Education Act, California Education Code §§ 221.5 - 231.5, against Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.

(e) FIFTH CAUSE OF ACTION: In her capacity as Decedent's successor in interest, for Violation of the Unruh Civil Rights Act, California Civil Code § 51, and/or California Civil Code § 51.5, against all Defendants.

(f) SIXTH CAUSE OF ACTION: In her capacity as Decedent's successor in interest, for Negligence pursuant to California Government Code §§ 815.2, 815.6, 820, against all Defendants.

(g) SEVENTH CAUSE OF ACTION: In her individual capacity, for Wrongful Death under California Law, against all Defendants.

2. This is an unlimited civil action in that the amount requested exceeds the sum of $25,000.00.

3. Venue in this Court is proper because: (a) at least one Defendant now resides in the Court's jurisdictional area; and (b) the injury to the person of Plaintiff occurred within the Court's jurisdictional area.

## PARTIES AND OTHER RELEVANT ACTORS

4. As alleged more fully below, this Complaint arises out of the harassment and subsequent death of Decedent SETH WALSH. Plaintiff WENDY WALSH is Decedent's mother, and asserts this Complaint: (a) in her capacity as Successor in Interest of Decedent, pursuant to California Code of Civil Procedure § 377.20 et seq. and 42 U.S.C. § 1988; and (b) in her individual capacity, for the wrongful death of Decedent, pursuant to 42 U.S.C. §§ 1983, 1988 and California Code of Civil Procedure § 377.60. Plaintiff died without a spouse, domestic partner, children or issue.

5. Roger J. Coulter was Decedent's father. However, Roger J. Coulter does not have standing to asserted any claims (a) in a capacity as a Successor in Interest of Decedent, or (b) in his individual capacity for the wrongful death of Decedent, because pursuant to the Judgment of Dissolution of Marriage of Wendy Y. Coulter, Petitioner, and Roger J. Coulter, Respondent, Kern County Superior Court Case No. S-1501-FL-573329, entered on September 16, 2005, Roger J. Coulter signed off all rights to Decedent to Plaintiff WENDY WALSH (formerly Wendy Y. Coulter).

6. Decedent SETH WALSH was born on February 12, 1997. At all relevant times herein, Decedent SETH WALSH was: (a) a minor male and a student enrolled in Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; and (b) gay (i.e., homosexual), and was perceived by all Defendants, students, and other relevant persons to be gay.

7. At all relevant times herein, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT: (a) was a political subdivision of the State of California; and (b) received federal financial assistance, within the meaning of 20 U.S.C.A. § 1681(a), both generally and specifically with respect to the programs and activities at Jacobsen Middle School. Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is statutorily liable under California law pursuant to: (a) California Government Code §§ 815.2 for the negligent conduct of Defendants SUPERINTENDENT SWANSON, SUSAN ORTEGA, MR. KAMINSKY, MS. KIRBY, MS. HAIGHT, MRS. KABONIC, MR. FEEHAN, and DOES 1 through 100, inclusive; (b) California Government Code § 815.6 for its own breaches of mandatory duties.

8. At all relevant times herein Defendant SUPERINTENDENT SWANSON was: (a) the Superintendent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

9. At all relevant times herein Defendant SUSAN ORTEGA was: (a) the Principal of Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

10. At all relevant times herein Defendant MR. KAMINSKY was: (a) the Vice Principal of Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

11. At all relevant times herein Defendant MS. KIRBY was: (a) a teacher at Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

12. At all relevant times herein Defendant MS. HAIGHT was: (a) a teacher at Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

13. At all relevant times herein Defendant MRS. KABONIC was: (a) a teacher at Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

14. At all relevant times herein Defendant MR. FEEHAN was: (a) a teacher at Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

15. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names. At all relevant times herein, Defendants DOES 1 through 100, inclusive,

were: (a) officers and agents of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; (b) employed as principals, deans, counselors, teachers, security guards or other employees at Tehachapi High School, a high school within, and under the jurisdiction and control of, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; and (c) acting within the scope of such agency and employment. With respect to the claims alleged herein under 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, said Defendants are sued in, and only in, their individual capacities pursuant to, inter alia, Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991). Plaintiff will amend this Complaint to allege the true names and capacities when ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants is liable in the manner set forth below for the acts, conduct and/or omissions concerning the events and happenings herein referred to, which proximately caused the damages and injuries to plaintiff as alleged herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Compliance With Claims Filing Requirements

16.  Plaintiff has complied with the California Tort Claims Act, California Government Code § 910 et seq., and the claims requirement of the California Sex Equity in Education Act, California Education Code §§ 221.5 - 231.5, and particularly California Education Code § 262.3(c), (d).

### The Harassment Of Plaintiff

17.  At all relevant times herein, many witnesses characterized Decedent as somewhat effeminate, with occasionally exaggerated mannerisms and speech. Decedent dressed in stereotypically female clothing and shoes, such as skinny jeans, pedal pushers,

scarves, and v-neck t-shirts; carried backpacks with designs not typically favored by middle school boys, such as Hello Kitty; and frequently changed the color and style of his hair. Throughout elementary and middle school, most of his friends were girls. Beginning in sixth grade, Decedent informed people that he was gay.

18. The harassment of Decedent dated back to elementary school. When Decedent was in fifth grade his mother, Plaintiff, complained to Decedent's principal and teacher about his peers' treatment of Decedent, including calling him "fag," "faggot," "homo," "gay," "queer," "sissy," "pussy," "emo," "pansy," and "girl" as pejorative terms. Other students told Decedent that he "should burn in hell" or "kill himself." Male students went up to Decedent and told Decedent it was "gross" and "wrong" to be gay. One student constantly referred to Decedent as "it." Students teased Decedent because his friends were girls and by saying Decedent acted like a girl.

19. Decedent began attending Jacobsen Middle School in 2008 – 2009, when he entered the sixth grade. The harassment of Decedent intensified that year. Decedent's peers routinely called Decedent names like those alleged above, pushed Decedent into lockers, and mocked him.

20. At Jacobsen Middle School, the Principal, Defendant SUSAN ORTEGA, and Vice Principal, Defendant MR. KAMINSKY, were the individuals designated to investigate complaints of sexual, gender based, and other types of harassment. When Decedent was in sixth grade, either Decedent or one of his classmates reported to the Vice Principal, Defendant MR. KAMINSKY, that Decedent was being harassed by his peers. After asking Decedent about the reported problems, the Vice Principal, Defendant MR. KAMINSKY, did not take further action.

21. At the end of Decedent's sixth grade year, Plaintiff met with the Vice Principal, Defendant MR. KAMINSKY, to express concern about harassment Plaintiff anticipated the next year, particularly in the physical education (P.E.) locker rooms. The Vice Principal, Defendant MR. KAMINSKY, indicated that he was aware of the problems Decedent was experiencing, but did not otherwise take any action. The Vice Principal, Defendant MR. KAMINSKY, responded to Plaintiff that, in a perfect world, Decedent would be treated equally, but that students were at a difficult age and he could not change attitudes originating in the students' homes.

22. The harassment Decedent was experiencing became unbearable for him beginning in seventh grade. Throughout Decedent's attendance at Jacobsen Middle School, but particularly in seventh grade, Decedent's peers routinely called Decedent hostile and demeaning names related to his nonconformity with gender stereotypes and sexual orientation, including "sissy," "girl," and vulgar references to female anatomy; insults meant to question his masculinity, including mocking his clothing as "girly," asking him, "do you sit down" to use the restroom, suggesting he should "get surgery" to become a female, and referring to him as the "girlfriend" of other male students; and anti-gay slurs and epithets.

23. Peers used language against Decedent of a hostile and demeaning sexual nature, including derogatory remarks related to sex between men and crude questions about sexual acts and behavior in which they suggested Decedent had engaged. Decedent was teased for being attracted to another boy at school. A male classmate asked Decedent out on a date as a joke. Peers spread hostile and patently false sexual rumors about Decedent.

24. Peers also physically harassed Decedent. Peers bumped Decedent out of the way when he was walking; hit items such as food out of Decedent's hands; obstructed Decedent's path as he tried to walk by; threw food, water bottles, pencils and erasers at

Decedent, shoved Decedent, and subjected Decedent to unwanted physical conduct of a sexual nature. This physical conduct was often accompanied by verbal comments such as those alleged above. Peers grabbed Decedent from behind while suggesting that Decedent would be sexually gratified by the contact. A peer attempted to shove a pencil up the seat of Decedent's pants.

25. Decedent suffered this conduct on school grounds on a daily basis. As a result, Decedent avoided certain areas of campus where harassment tended to occur. Decedent would frequently roam the hallways during breaks, a time when other students were socializing, and take other measures to avoid harassment. Decedent often went to the library for the same purpose. Harassment of Decedent was widespread and perpetrated by dozens of individuals.

26. Decedent was often mocked and demeaned by his peers when he was not present. A common way to describe something as undesirable was, "that's gay, but not as gay as [Decedent]." The negative manner in which Decedent was discussed and referred to by others, even when he was not present, had an adverse impact on the environment because it affected the way students treated Decedent when he was present. Some students did not want to sit or be near Decedent. Two students had friends who ceased to associate with them because they were friends with Decedent. Another student was told not to communicate with Decedent because Decedent was "evil."

27. Some of the most personally demeaning and hostile incidents, including incidents of physical harassment and assault, regularly occurred in the P.E. locker room. When Decedent was in the seventh and eighth grades, peers often shouted insulting words about him in the locker room, including anti-gay slurs and comments suggesting that, because Decedent was gay, he would try to engage in inappropriate sexual conduct with them. Peers yelled out derogatory comments about Decedent to the P.E. teacher. A male

peer threatened to rape Decedent. Classmates pulled down Decedent's pants in the locker room. As a result, Decedent would change his clothes in a corner, and sometimes in a bathroom stall, and at one point ceased to change into clothes for P.E. at all. During P.E. classes, male students did not want to partner with Decedent. When one female partnered with Decedent, many classmates called out insults to both of them.

28. Toward the beginning of Decedent's seventh grade year, Plaintiff called the Principal, Defendant SUSAN ORTEGA, and threatened to press criminal charges against the students involved if the harassment did not stop. Decedent's grandmother, who was then a school board member, told the Principal, Defendant SUSAN ORTEGA, that Decedent was being harassed the first time the grandmother met the Principal, Defendant SUSAN ORTEGA.

29. Beginning the first week of November 2009, at Plaintiff's request and in direct response to the harassment, Decedent was placed on independent study. The Vice Principal, Defendant MR. KAMINSKY, acknowledged that Plaintiff told him that it was because of peer harassment.

30. While Plaintiff was on campus with Decedent to pick up his belongings after Decedent entered the independent study program, she heard another student yell "queer" at Decedent from inside a classroom. Plaintiff personally escorted the student to the office and reported the incident.

31. On or about January 27, 2010, after several weeks of independent study, Decedent returned to Jacobsen Middle School. The following day, Plaintiff called the Principal, Defendant SUSAN ORTEGA, to report problems Decedent was experiencing with other students. Defendant SUSAN ORTEGA's handwritten notes from her conversation with Plaintiff read: "[Decedent] is homosexual – mom took out of school – is

being harassed daily." Upon investigation, the offending student indicated that he made the comment: (a) to Decedent at the urging of another student; and (b) in front of several students. Despite this, the Principal, Defendant SUSAN ORTEGA, did not speak with the other student who was implicated, or the students who heard the comment.

32. On two occasions during Decedent's seventh grade year, one of Decedent's friends escorted Decedent to the main office to seek help from a counselor in dealing with the harassment. Decedent talked with the Vice Principal, Defendant MR. KAMINSKY, on both occasions.

33. The Vice Principal, Defendant MR. KAMINSKY, acknowledged that Plaintiff called him two or three times and met with him in his office to report incidents. Plaintiff expressed frustration that Decedent was still being harassed by students at the school.

34. Decedent's P.E. teacher called Plaintiff to report that Decedent was not changing into his clothes for P.E. class, and Plaintiff explained to the teacher that Decedent was not changing into his clothes due to harassment in the locker room. Plaintiff expressed frustration during this call that the school was not working with Decedent. The P.E. teacher advised her co-teacher, who supervised the boy's locker room, of the conversation, but did not take any further action. The P.E. teacher ignored the harassment.

35. Defendant MS. KIRBY told a student that she and other teachers had taken bets about when Decedent would "come out" as gay.

36. Defendant MS. HAIGHT told a student that she wanted to ask Decedent and his boyfriend what was "wrong" with them.

37. Defendant KABONI called Decedent "fruity" in front of an entire classroom full of students.

38. Harassment of Decedent by other students took place during study hall and in the boy's locker room, where teachers, including Defendant MR. FEEHAN, were present. Said teachers, including Defendant MR. FEEHAN, took no action to protect Decedent, halt the harassment or Decedent or remedy the situation.

39. A few days after Decedent started his eighth grade year at Jacobsen Middle School, another student took Decedent's headphones and tore them apart.

40. As reported by other students and peers, the harassing conduct was so prevalent and obvious that the responsible adults must have known and, indeed, witnessed it.

41. Security officers heard comments and saw physical conduct directed at Decedent, but ignored it. The Vice Principal, Defendant MR. KAMINSKY, turned away without responding after hearing a student call Decedent an anti-gay slur.

42. One security guard admitted that he was aware that students "picked on" Decedent."

43. Another security officer admitted that she learned of negative comments made by students to and about Decedent.

44. In at least three particular classrooms, Decedent was regularly taunted by peers. In one of these classrooms, it was reported that the some of the students "despised" Decedent and made vulgar comments to him.

45.   One of Decedent's teachers would mock him in class by, for example, pointing to a picture of something ugly and suggesting it resembled Decedent. Other teachers did not engage with Decedent the same way they did with other students. Another teacher had a conversation with a classmate during which the teacher made fun of gay people and mentioned Decedent by name. Yet another teacher would make negative comments directly to Decedent; for example, when Decedent raised his hand and said he needed help, the teacher responded, "That's right, you do need help."

46.   As an actual, legal and proximate result of such harassment, Decedent's grades dropped precipitously. During Decedent's sixth grade year, Decedent passed all of his classes and achieved grades of A and B in several of them; he finished the year with a GPA of 2.95. By the end of the seventh grade year, Decedent's GPA had dropped to 1.47; in the last quarter, Decedent received a D grade in two courses and an F grade in three. On or about February 5, 2010, the school sent Plaintiff a notice that Decedent was in danger of not being promoted to eighth grade. The harassment continued for the remainder of Decedent's seventh grade year.

47.   Decedent was miserable during his first two weeks of eighth grade. On or about September 1, 2010, Plaintiff met with the Principal, Defendant SUSAN ORTEGA, to request that Decedent again be placed on independent study. The Principal, Defendant SUSAN ORTEGA, was aware of the reasons for the request. **Indeed, under the "rationale for placement" section of the form Plaintiff wrote "sexual orientation ridicule." The form was signed by the Principal, Defendant SUSAN ORTEGA.** The Principal, Defendant SUSAN ORTEGA, understood that peer harassment was the reason why Decedent was placed on independent study. The Vice Principal, Defendant MR. KAMINSKY, was also aware that peer harassment was the reason why Decedent was placed on independent study.

48. The Principal, Defendant SUSAN ORTEGA, approved the placement of Decedent on independent study because of "sexual orientation ridicule" and peer harassment without suggesting any alternative means of addressing the environment for Decedent at the school. Neither the Principal, Defendant SUSAN ORTEGA, nor the Vice Principal, Defendant MR. KAMINSKY, took any steps following the meeting to investigate or respond to the harassment. The Vice Principal, Defendant MR. KAMINSKY, concluded that, although the Principal, Defendant SUSAN ORTEGA, told him Decedent was being placed on independent study because Decedent was being harassed, and the Vice Principal, Defendant MR. KAMINSKY, did not doubt that the harassment was happening, additional investigation was not needed because Decedent was no longer attending school. **Thus, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT's "solution" to the long, ongoing, consistent, continuous and unrelenting harassment of Decedent was to allow Decedent to be harassed to the point where he was forced to leave school, at which point it was Defendant's opinion that the harassment would no longer be Defendant's problem.**

49. Decedent's teachers were not informed of the reason for Decedent's placement on independent study in either the 2009 - 2010 school year or the 2010 – 2011 school year. Decedent's teachers were never asked whether they had witnessed Decedent having problems, nor did any administrator ever suggest that the teachers be vigilant about possible harassment or take any other measures on Decedent's behalf.

### The Death Of Decedent

50. On or about September 19, 2010, Decedent and a female friend had an encounter with a student from Jacobsen Middle School and three students from Defendant

TEHACHAPI UNIFIED SCHOOL DISTRICT's high school. Decedent was threatened, taunted, followed and physically assaulted.

51. On the afternoon of on or about September 19, 2010, as an actual, legal and proximate result of **all** of the harassment alleged herein, and as an actual, legal and proximate result of **all** of the reckless, deliberately indifferent, negligent and other wrongful acts and omissions of Defendants, and each of them, alleged herein, Decedent hanged himself from a tree. Decedent was discovered and cut down by his mother and his younger brother. After being in a coma for over a week, Decedent died on or about September 28, 2010.

52. Prior to hanging himself, Decedent wrong a letter to his other and siblings. The letter reads, in total:

> I love you. Thank you for having me. It's been a pleasure. I know this will bring much pain. But I will hopefully be in a better place than this s**t hole. Please, put my body in burial and visit my used body. And make sure to make the school feel like s**t for bringing you this sorrow. This life was a pleasure, mostly having you guys to bring me through the pain. Hopefully I become the universe.

### Notice To Defendants

53. The harassment of Decedent was in plain sight, occurring in hallways and other common areas, P.E. classes, during breaks, and was widespread and well-known to students and staff. In addition, as a matter of law Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT had notice of, and thus a duty to respond to, harassment of which it