1
2
3
4
5
6
7
8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WENDY WALSH,                                Case No. 1:11-cv-01489 LJO JLT

12            Plaintiff,                         ORDER ON DEFENDANTS' MOTIONS TO
                                                 DISMISS
13       vs.
                                                 (Docs. 7 & 8)
14   TEHACHAPI UNIFIED SCHOOL
     DISTRICT, et al.,
15
              Defendants.
16   _____/

17          Pending before the Court are Defendants' motions to dismiss.  Defendants Tehachapi Unified

18   School District ("School District"), Superintendent Richard Swanson ("Swanson"), Principal Susan

19   Ortega ("Ortega"), and Vice Principal Paul Kaminski ("Kaminski") filed a motion to dismiss pursuant

20   to Federal Rule of Civil Procedure 12(b)(6).  Similarly, Defendants Shari Kabonic ("Kabonic"), Laura

21   Haight ("Haight"), Annette Kirby ("Kirby"), and Martin Feehan ("Feehan") filed a motion to dismiss

22   pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Wendy Walsh ("Walsh") has opposed

23   the motions.  Upon careful consideration of the parties' submissions and the entire record in this case,

24   the Court GRANTS IN PART and DENIES IN PART Defendants' motions.

25                                         **I. BACKGROUND**

26          Walsh is the mother and successor-in-interest of Seth Walsh ("Decedent"), a thirteen-year-old

27   boy who committed suicide in September 2010.  (Doc. 1-3, Am. Compl., ¶¶ 4, 51.)  Swanson, Ortega,

28   and Kaminski are the Superintendent of the School District, the principal of Jacobsen Middle School,

                                                  1

and the vice principal of Jacobsen Middle School, respectively. (Id. ¶¶ 8-10.) Kirby, Haight, Kabonic, and Feehan are all teachers at Jacobsen Middle School. (Id. ¶¶ 11-14.) Walsh alleges the following regarding the circumstances surrounding her son's death.

Decedent was homosexual, and in the beginning of the sixth grade, Decedent informed others of his sexual orientation. (Id. ¶ 6.) As a result, many students at Jacobsen Middle School were openly hostile to Decedent. (Id. ¶ 19.) Some students routinely called Decedent derogatory names such as "faggot," "pussy," "pansy," and "sissy." (Id. ¶¶ 18-19.) Other students expressed disgust at Decedent and told him to "burn in hell" or "kill himself." (Id. ¶ 18.) Oftentimes Decedent was pushed into the lockers by his peers. (Id. ¶ 19.)

At the end of Decedent's sixth grade, Walsh met with Kaminski to express concern over the harassment. (Id. ¶ 21.) Kaminski indicated that he was aware of the harassment; faculty and students generally perceived Decedent to be homosexual. (Id. ¶¶ 6, 21.) Kaminski, however, did not take any remedial action. (Id. ¶ 21.) Kaminski explained that "in a perfect world" Decedent would be treated equally, but students in Decedent's class were at a difficult age and he could not change attitudes that were developed at home. (Id.)

The harassment only intensified when Decedent entered the seventh grade. (Id. ¶ 22.) Verbal harassment became widespread and more sexually explicit. (See id. ¶¶ 23, 25.) Physical harassment became more confrontational. For example, students bumped Decedent and obstructed his path while he walked; students hit food out of Decedent's hands; and students threw food, water bottles, pencils, and erasers at Decedent. (Id. ¶ 24.) On one occasion, a student attempted to shove a pencil up the seat of Decedent's pants. (Id.)

Teachers also made disparaging comments about Decedent. Kirby told a student that she and other teachers had taken bets on when Decedent would "come out." (Id. ¶ 35.) Haight told a student that she wanted to ask Decedent and his boyfriend what was "wrong" with them. (Id. ¶ 36.) Kabonic called Decedent "fruity" in front of a classroom of students. (Id. ¶ 37.) On another occasion, a teacher made fun of homosexuals to a student and specifically mentioned Decedent by name. (Id. ¶ 45.) Other teachers suggested that Decedent was somehow ugly or was "in need of help" because of his sexual orientation. (Id.)

1    Ortega, Kaminski, and Feehan were well-aware of the harassment Decedent was subjected to.

2    Walsh directly contacted and complained to Ortega and Kaminski multiple times.  (Id. ¶¶ 28, 33.)  In

3    addition, Decedent spoke with Kaminski twice regarding ways Decedent could learn to cope with the

4    harassment.  (Id. ¶ 33.)  Kaminski and Feehan were even present at times when students harassed and

5    insulted Decedent.  (See id. ¶¶ 38, 41.)  Nevertheless, Ortega, Kaminski, and Feehan did not seriously

6    investigate the problem, did not speak with the students harassing Decedent, and did not take steps to

7    remedy the situation.  (See id. ¶¶ 31, 38, 41, 48.)  As a result, for a few weeks during his seventh and

8    eighth grade years, Walsh was forced to place her son in independent study (home schooling).  (Id. ¶¶

9    29, 31, 47.)  Decedent's grades fell.  (Id. ¶ 46.)

10    On September 19, 2010, Decedent and a friend encountered a student from Jacobsen Middle

11    School and three students from a high school in the School District.  (Id. ¶ 50.)  The students taunted,

12    threatened, and physically assaulted Decedent.  (Id.)  That afternoon, Decedent hanged himself from a

13    tree in his own backyard.  (Id. ¶ 51.)  Decedent left a suicide note thanking his family for their support.

14    (Id. ¶ 52.)  Decedent was later discovered by Walsh and Decedent's younger brother and was taken to

15    the hospital.  (Id. ¶ 51.)  After being comatose for more than a week, Decedent finally passed away on

16    September 28, 2010.  (Id.)

17    Based on the above allegations, Walsh seeks to recover monetary damages individually and as

18    the successor-in-interest to Decedent.  Walsh asserts eight claims to this end: (1) failure by the School

19    District to prevent sex, gender, and sexual orientation based harassment in violation of Title IX of the

20    Education Amendments Act of 1972 ("Title IX"); (2) discrimination by all the defendants, except the

21    School District, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United

22    States Constitution; (3) deprivation of familial relationship and companionship by all the defendants,

23    except the School District, in violation of the First and Fourteenth Amendments of the United States

24    Constitution; (4) discrimination by the School District in violation of the equal protection provision of

25    the California Constitution and California's Sex Equity in Education Act; (5) discrimination by all the

26    defendants in violation of California's Unruh Civil Rights Act; (6) negligence by all the defendants in

27    violation of California Government Code sections 815.2, 815.6, and 820; (7) wrongful death; and (8)

28    bystander emotional distress.  (Doc. 1-4 at 2-17.)

1  On September 8, 2011, the School District, Swanson, Ortega, and Kaminski filed a motion to

2  dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 7.)  A day later on September 9,

3  2011, Kabonic, Haight, Kirby, and Feehan also filed a motion to dismiss pursuant to Federal Rule of

4  Civil Procedure 12(b)(6).  (Doc. 8.)  Walsh filed an opposition to both motions to dismiss on October

5  10, 2011.  (Doc. 12.)

6  **II. LEGAL STANDARD**

7  A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the

8  legal sufficiency of a claim presented in the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

9  2001).  Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged

10  under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper.  Balistreri v. Pacifica Police

11  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

12  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to

13  state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

14  (2007).  "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of

15  a cause of action will not do."  Id. at 555, 557.  "A claim has facial plausibility when the plaintiff pleads

16  factual content that allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Although the

18  plausibility standard is not akin to a probability requirement, "it asks for more than a sheer possibility

19  that a defendant has acted unlawfully."  Id.

20  In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of

21  the complaint as true and construes the pleadings in the light most favorable to the party opposing the

22  motion.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, the court may

23  disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit.

24  Id.  The court may also disregard allegations that are "conclusory" or are the product of unreasonable

25  deductions and inferences.  Id.  Finally, if the court concludes that dismissal under Rule 12(b)(6) is

26  warranted, the court should not dismiss the complaint "unless it determines that the pleading could not

27  possibly be cured by the allegation of other facts."  Cook, Perkiss & Liehe, Inc. v. Northern California

28  Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

4

### III. DISCUSSION

**A.   FEDERAL CLAIMS**

    **1.   Title IX**

Walsh seeks to recover damages against the School District under Title IX on two theories: (1) the School District failed to prevent student-on-student harassment; and (2) the School District failed to prevent teacher-on-student harassment.  (Doc. 1-4 at 2.)  The School District challenges the second theory in its motion to dismiss.  Specifically, the School District argues that Walsh fails to allege any facts demonstrating that a teacher harassed Decedent.  (Doc. 7 at 30-31.)  In the School District's view, Walsh alleges, at most, that two unidentified teachers directed stray remarks at Decedent, which alone cannot support a claim for harassment or discrimination.  (Id. at 31.)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).  Sexual harassment of a student by a teacher is actionable under Title IX.  See Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75 (1992).  To prevail, the student must demonstrate that the harassing conduct was so severe or pervasive that he or she was, in effect, deprived access to the educational benefits or opportunities provided by the school.  See Jennings v. Univ. of N.C., 482 F.3d 686, 695-96 (4th Cir. 2007); Stanley v. Trustees of the Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006); Hayut v. State Univ. of N.Y., 352 F.3d 733, 749-50 (2d Cir. 2003).  In addition, in order to recover damages from a school district, the student must show that (1) an official with authority to address and correct the alleged harassment had (2) actual knowledge of the harassment but (3) responded with deliberate indifference.  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998).

Contrary to the School District's assertion in its motion to dismiss, Walsh alleges that several teachers made sexually harassing comments to Decedent.[1]  First, Walsh alleges that on one occasion,

---

[1] Harassment based on an individual's nonconformity with sexual stereotypes or "norms" can constitute sexual harassment.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 235-37 (1989) (woman's nonconformity with employer's expectations of femininity supports a sex discrimination claim under Title VII); Jespersen v. Harrah's Operating Co., 444 F.3d 1104, 1112-13 (9th Cir. 2006) (en banc) ("[S]exual harassment of an employee because of that employee's failure to conform to commonly-accepted gender stereotypes is sex discrimination in violation of Title VII."); Oona by Kate S. v. McCaffrey, 143 F.3d 473, 476-77 (9th Cir. 1998) (Title VII standards apply to hostile environment claims under Title IX).

1   Kabonic called Decedent "fruity" in front of a classroom of students.  (Doc. 1-3 ¶ 37.)  Second, Walsh

2   asserts that one of Decedent's teachers mocked Decedent in the classroom by, "for example, pointing

3   to a picture of something ugly and suggesting it resembled Decedent."  (Id. ¶ 45.)  Third, Walsh avers

4   that another one of Decedent's teachers "would make negative comments directly to Decedent."  (Id.)

5   As an example, Walsh avers that "when Decedent raised his hand and said he needed help, the teacher

6   responded, 'That's right, you do need help.'"  (Id.)  Finally, in addition to the remarks made directly to

7   Decedent, Walsh avers that other teachers made various comments about Decedent when he was not

8   present.  (Id. ¶¶ 35-36, 45.)

9        The Court nevertheless agrees with the School District that Walsh's allegations fail to plead a

10  plausible teacher-on-student harassment claim under Title IX.  Whether conduct arises to actionable

11  sexual harassment "often depends on a constellation of surrounding circumstances, expectations, and

12  relationships[.]"  Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998).  Here, Walsh fails to

13  allege any facts surrounding the circumstances in which the harassing comments were allegedly made.

14  In the absence of such, it remains unclear whether Kabonic's single comment was sufficiently hostile

15  and severe to constitute actionable sexual harassment under Title IX.  See id. at 81 ("[T]he objective

16  severity of [the] harassment should be judged . . . considering *all* the circumstances.") (emphasis added)

17  (internal quotations omitted).  It also remains unclear whether the other teachers made their comments

18  because of Decedent's nonconformity with traditional sexual stereotypes.  See Wolfe v. Fayetteville,

19  Ark. Sch. Dist., 648 F.3d 860, 867 (8th Cir. 2011) (to violate Title IX the alleged harassment must be

20  motivated by the student's gender or failure to conform with gender stereotypes).  One could certainly

21  speculate that such might have been the case; however, to state a cognizable claim, Walsh's "[f]actual

22  allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S.

23  at 555.  Accordingly, Walsh's Title IX teacher-on-student harassment claim against the School District

24  is DISMISSED with leave to amend.

25        **2.    Section 1983**

26        Walsh seeks to recover damages against all the defendants except the School District pursuant

27  to 42 U.S.C. § 1983.  Section 1983 provides:

28        Every person who, under color of [state law] . . . subjects, or causes to be subjected, any
          citizen of the United States or other person within the jurisdiction [of the United States]

6

1    to the deprivation of any rights, privileges, or immunities secured by the Constitution and
2    laws [of the United States], shall be liable to the party injured in an action at law, suit in
     equity, or other proper proceeding for redress . . . .

3    42 U.S.C. § 1983.  Section 1983 does not create any substantive rights, but instead provides a vehicle

4    for plaintiffs to bring federal constitutional and statutory challenges against actions by state and local

5    officials.  Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under § 1983, a

6    plaintiff must allege that: (1) the defendants deprived plaintiff of a federal constitutional or statutory

7    right, and (2) the defendants acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988);

8    Anderson, 451 F.3d at 1067.

9                         **a.      Preemption by Title IX**

10        As an initial matter, the parties quarrel over whether Walsh may bring a § 1983 action based on

11   a violation of Title IX itself.  (Doc. 7 at 25-46; Doc. 8 at 14-15; Doc. 12 at 6-7.)  The Court, however,

12   need not resolve the issue here.  A careful reading of the operative complaint reveals that Walsh does

13   not ground her § 1983 claims against any of the named defendants on violations of Title IX.[2]  Rather,

14   Walsh claims that the named defendants (1) discriminated against Decedent in violation of the Equal

15   Protection Clause of the Fourteenth Amendment, and (2) deprived Walsh of a familial relationship in

16   violation of the First and Fourteenth Amendments.  (Doc. 1-4 ¶¶ 66-68, 73-77.)  The Court therefore

17   turns to those claims now.

18                **b.      Equal Protection - Failure to Investigate and Discipline**

19        The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . .

20   deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV,

21   § 1.  This "is essentially a direction that all similarly situated persons should be treated alike."  City of

22   Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "To establish a § 1983 equal protection

23   violation, the plaintiff[] must show that the defendants, acting under color of state law, discriminated

24   against [him] as [a] member[] of an identifiable class and that the discrimination was intentional" or

25   resulted from deliberate indifference.  Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1130, 1134

26   (9th Cir. 2003).  In the specific context of a school administrator's failure to investigate or discipline

27

28          [2] Walsh only asserts § 1983 claims for violations of Title IX against unidentified Defendants DOES 1-100.  (See
     Doc. 1-4 ¶ 69.)

                                          7

1   harassment at school, a defendant acts with deliberate indifference when he or she responds to known

2   harassment in a manner that is clearly unreasonable. Id. at 1135.

3                                    **i.       Superintendent Swanson**

4           Swanson argues that Walsh fails to state an equal protection claim against him because Walsh

5   fails to allege facts relating to him. (Doc. 7 at 20.)  The Court agrees.  Walsh makes no allegations as

6   to Swanson.  Walsh apparently seeks to impose liability on Swanson simply because Swanson holds a

7   supervisory position as the Superintendent of the School District.  Supervisory personnel, however,

8   cannot be held liable under § 1983 for the actions of their employees under the theory of *respondeat*

9   *superior*.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Under § 1983, a defendant can

10  only be held liable for his own individual actions. Iqbal, 129 S. Ct. at 1948.  Because Walsh fails to

11  allege facts demonstrating that Swanson, through his own actions, discriminated against Decedent or

12  otherwise caused Decedent to be discriminated against, Walsh fails to state an equal protection claim

13  against Swanson.  Accordingly, this claim is DISMISSED with leave to amend.

14                           **ii.       Principal Ortega, Vice Principal Kaminski, and Teacher Feehan**

15          Ortega, Kaminski, and Feehan contend that Walsh cannot plead a cognizable equal protection

16  claim by simply alleging that they inadequately responded to Decedent's complaints regarding sexual

17  orientation based harassment.  (Doc. 7 at 24; Doc. 8 at 20.)  Rather, the defendants argue that Walsh

18  must allege facts showing that they treated Decedent's complaints of harassment differently from other

19  types of harassment. (Doc. 7 at 24; Doc. 8 at 20.)  The defendants conclude that because Walsh fails to

20  allege such facts here, the equal protection claims against them must be dismissed for failure to state a

21  claim.  (Doc. 7 at 24; Doc. 8 at 20.)

22          At this stage of the case, it is not necessary for Walsh to provide a precise comparison between

23  the defendants' responses to Decedent's complaints of sexual orientation based harassment and other

24  types of harassment, as the defendants suggest.[3]  To plead a cognizable equal protection claim, Walsh

25  _____

26          [3] The cases the defendants cite to as support for their argument provide no differently.  Those cases all dealt with
    the issue of whether there was sufficient *evidence* in the record to show discriminatory treatment.  See Flores, 324 F.3d at
27  1135 (reasonable juror could find discriminatory motive when the evidence suggested that plaintiff's complaints regarding
    harassment were treated differently than other types); Roe v. Gustine Unified Sch. Dist., 678 F. Supp. 2d 1008, 1023 (E.D.
28  Cal. 2009) (summary judgment warranted where the plaintiff failed to offer evidence to support his allegation that male-on-
    male harassment complaints were treated differently than male-on-female complaints).  This case has not reached that posture.

1  must simply allege facts that plausibly show that Decedent was discriminated against as a member of

2  an identifiable class.  See Flores, 324 F.3d at 135.  Walsh has done so here.  According to Walsh: (1)

3  over the course of more than two years, Walsh and Decedent complained to Ortega and Kaminski that

4  Decedent faced severe and pervasive harassment from his peers for being homosexual; (2) despite the

5  complaints, neither Ortega nor Kaminski took any disciplinary action; (3) instead, Kaminski simply

6  responded that "in a perfect world" Decedent would be treated equally despite his sexual orientation;

7  and (4) Ortega's only solution to the harassment was to have *Decedent* removed from school.  These

8  allegations sufficiently plead discriminatory treatment based on membership in an identifiable class.[4]

9  Accordingly, the motion to dismiss Walsh's claims under the Equal Protection Clause is DENIED as

10  to Ortega and Kaminski.

11      As to Feehan, the Court finds that Walsh's allegations fall short of stating a cognizable claim.

12  Walsh's allegations regarding Feehan provide, in their entirety: "Harassment of Decedent by other

13  students took place during study hall and in the boy's locker room, where teachers, including Defendant

14  Mr. FEEHAN, were present.  Said teachers, including [FEEHAN], took no action to protect Decedent,

15  halt the harassment or remedy the situation."  (Doc. 1-3 ¶ 38.)  These allegations are vague and are not

16  far from being a mere "recitation of the elements of the cause of action[.]"  Iqbal, 129 S. Ct. at 1949.

17  This is insufficient to state a claim.  Id.  Accordingly, Walsh's equal protection claim against Feehan is

18  DISMISSED with leave to amend.

19                    **iii.     Teachers Kirby, Haight, and Kabonic**

20      Lastly, Kirby, Haight, and Kabonic argue that Walsh fails to state a cognizable equal protection

21  claim against them because the only allegation Walsh makes as to them is that they made stray remarks

22  about Decedent.  (Doc. 8 at 14.)  Kirby, Haight, and Kabonic reassert that stray remarks are insufficient

23  to establish discrimination or harassment as a matter of law.  (Id.)

24      Walsh fails to plead a cognizable equal protection claim against Kirby, Haight, or Kabonic for

25  failing to investigate or discipline harassment.  Walsh's allegations fall short because there are no facts

26  demonstrating deliberate indifference on the part of the defendants.  Walsh does not allege that Kirby,

27

28      [4] Homosexuals are an identifiable class for the purpose of equal protection.  See Flores, 324 F.3d at 1134-35 (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570-71 (9th Cir. 1990)).

9

1   Haight, or Kabonic witnessed or otherwise were aware of specific incidents of harassment faced by

2   Decedent.  Nor does Walsh allege that Kirby, Haight, or Kabonic ever received complaints regarding

3   the harassment.  At most, Walsh suggests that the defendants knew that Decedent was homosexual and

4   perhaps, as a general matter, faced hostility from other students.  This does not arise to a cognizable

5   claim.  Accordingly, to the extent that Walsh claims that Kirby, Haight, and Kabonic violated the Equal

6   Protection Clause by failing to investigate or discipline harassment, the claims are DISMISSED with

7   leave to amend.

8               **c.    Equal Protection - Sexual Harassment**

9        Walsh also claims, apparently, that Kirby, Haight, and Kabonic violated the Equal Protection

10  Clause by sexually harassing Decedent.  (See Doc. 12 at 6) ("[I]n the present case [Walsh] alleges not

11  only non-feasance in the form of deliberate indifferent [sic], but also affirmative discriminatory conduct

12  and statements by the individual defendants.").  Some circuits have explicitly recognized that sexual

13  harassment by a public official in an educational setting can violate the Equal Protection Clause and is

14  cognizable under § 1983.  See Jennings, 444 F.3d at 701; Hayut, 352 F.3d at 743-45.  To state a claim

15  under this theory of liability, a plaintiff must allege that he or she was subjected to severe and pervasive

16  harassment that was motivated by gender.  Jennings, 444 F.3d at 701, accord Bator v. Hawaii, 39 F.3d

17  1021, 1027 (9th Cir. 1994) (allegations of persistent workplace harassment that is motivated by gender

18  supports a discrimination claim under the Equal Protection Clause).

19              **i.    Teachers Kirby and Haight**

20       Here, the Court agrees with Kirby and Haight that their comments regarding Decedent cannot

21  amount to unlawful sexual harassment and discrimination.  Walsh alleges that at one point, Kirby told

22  a student that she and other teachers had taken bets on when Decedent would "come out." (Doc. 1-3 ¶

23  35.)  With respect to Haight, Walsh alleges that Haight told a student that she wanted to ask Decedent

24  and his boyfriend what was "wrong" with them." (Id. ¶ 36.)  While these comments may have been

25  distasteful, they do not demonstrate severe or pervasive gender harassment.  At most, the allegations

26  demonstrate that Kirby and Haight gossiped about Decedent on an occasion.  This does not give rise to

27  a constitutional violation.  See, e.g., Dyess v. Tehachapi Unified Sch. Dist., No. 1:10-CV-0166-AWI-

28  JLT, 2010 U.S. Dist. LEXIS 82653, at *24-25 (E.D. Cal. Aug. 6, 2010) (teacher's offhand remarks and

1   opinion of a student do not alone support a viable equal protection claim).  Accordingly, to the extent

2   that Walsh claims that Kirby and Haight sexually harassed Decedent in violation of the Equal Protection

3   Equal Protection Clause, the claims are DISMISSED with leave to amend.

4                              **ii.      Teacher Kabonic**

5          Whether Walsh states a viable sexual harassment claim against Kabonic is slightly closer of a

6   call.  Walsh avers that Kabonic called Decedent "fruity" in front of a classroom of students.  (Doc. 1-3

7   ¶ 37.)  The context in which the remark was made, specifically the fact that the comment was directed

8   at Decedent in front of a classroom of students, arguably makes this more akin to harassment than a

9   simple offhand comment.  Nevertheless, Walsh fails to allege facts demonstrating that the harassment

10  by Kabonic was "severe or pervasive." Jennings, 482 F.3d at 701. See Bator, 39 F.3d at 1027.  Quite

11  the contrary: it appears at this point that Kabonic made a single, one-word remark.  Accordingly, to the

12  extent that Walsh claims that Kabonic sexually harassed Decedent in violation of the Equal Protection

13  Clause, the claim is DISMISSED with leave to amend.

14                         **d.      Substantive Due Process - Familial Relationships**

15         The Ninth Circuit recognizes that a parent has a Fourteenth Amendment liberty interest in the

16  companionship and society of his or her child. Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).

17  A deprivation of that interest may arise to a violation of the substantive component of the Due Process

18  Clause. See Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998).  To prevail

19  on such a claim, a plaintiff must show that the defendant's conduct in causing the deprivation "shocks

20  the conscience." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  "What state of mind shocks

21  the conscience depends on the circumstances of a particular case." Provencio v. Vazquez, 258 F.R.D.

22  626, 640 (E.D. Cal. 2009) (citation omitted).  Mere negligence, however, is never enough.  Woodrum

23  v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (citing Daniels v. Williams, 475 U.S. 327,

24  330-32 (1986)).

25                              **i.      Superintendent Swanson**

26         As explained above, Walsh fails to allege any facts relating to Swanson.  Accordingly, Walsh's

27  deprivation of familial relationships claim against Swanson is DISMISSED with leave to amend.  See

28  Monell, 436 U.S. at 691 (no vicarious liability under § 1983); Iqbal, 129 S. Ct. at 1949 ("To survive a

1    motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim for relief that

2    is plausible on its face.") (internal quotation marks and citation omitted).

3                        **ii.      Principal Ortega, Vice Principal Kaminski, and Teachers Kirby,**

4                        **Haight, Kabonic, and Feehan**

5            The remaining defendants move to dismiss this claim on the ground that Decedent's decision to

6    commit suicide acted as an independent, superceding event that severed any liability on the part of the

7    defendants for Decedent's death.  (Doc. 7 at 20; Doc. 8 at 20-21.)  The defendants stress the following

8    facts in this regard: (1) Decedent committed suicide over two weeks after he left school; (2) Decedent

9    decided to commit suicide only after being harassed on non-school property; and (3) Decedent wrote a

10   detailed suicide note before hanging himself.  (Doc. 7 at 21-22.)  Walsh counters in her opposition that

11   the issue of whether Decedent's decision to commit suicide constitutes an intervening cause is one of

12   fact, which cannot be decided on a motion to dismiss.  (Doc. 12 at 4.)  Walsh maintains that there are

13   sufficient facts to plausibly show that Decedent's death was a reasonably foreseeable consequence of

14   the defendant's actions.  (Id. at 5.)

15           To support a claim under § 1983, a plaintiff must sufficiently allege proximate cause.  Arnold

16   v. International Business Machines Corp., 637 F.2d 1350, 1355-56 (9th Cir. 1981).  The touchstone of

17   proximate cause under § 1983 is foreseeability.  See Tahoe-Sierra Preservation Council, Inc. v. Tahoe

18   Regional Planning Agency, 216 F.3d 764, 785 (9th Cir. 2000).  Traditional rules of tort law apply and

19   define which events are reasonably foreseeable and which causes are intervening such that the chain of

20   causation is broken.  Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).  "Although 'the

21   question of proximate cause . . . is sometimes for the court and sometimes for the jury,' the court decides

22   whether reasonable disagreement on the issue is tenable."  Id. (quoting Springer v. Seaman, 821 F.2d

23   871, 876 (1st Cir. 1987)).

24           One court in this district has endeavored to succinctly explain proximate cause in the specific

25   context of a suicide or suicide attempt.  See Soto v. City of Sacramento, 567 F. Supp. 662 (E.D. Cal.

26   1983).  In Soto, the defendants moved for summary judgment on the plaintiff's § 1983 claim under the

27   Fourteenth Amendment for deprivation of bodily integrity.  Id. at 692.  The defendants argued that as

28   a matter of law, the plaintiff's intervening act of attempted suicide broke the causal chain and released

                                                       12

them from liability for injuries sustained by the plaintiff as a result of the suicide attempt.  Id.  After

examining the state of the law as reflected in the Restatement of Torts and California common law, the

court denied the defendants' motion, explaining:

> [T]he key to determining a break in the causational chain is whether plaintiff's act was volitional.  It follows, then, that any mental state, however characterized [i.e., neurosis, depression, or delirium], which negates a volitional state would not break the causal chain.  That is to say, plaintiff's attempted suicide, if the result of a mental condition proximately caused by [the] defendants' violation of his constitutional rights, which condition prevents him from realizing the nature of his act or controlling his conduct, constitutes an intervening (i.e., one cause) but not superceding (i.e., sole cause) of plaintiff's injury and thus does not, as a matter of law, break the chain of proximate cause.  On the other hand, if at the time of the attempted suicide plaintiff was able to appreciate the nature of his act and able to control his conduct, but chose freely to attempt suicide, defendants would not be liable for the injuries sustained by virtue of the attempted suicide. . . . Having concluded that causation turns upon plaintiff's mental state, given the present record it becomes clear that the issue cannot be determined on summary judgment.

Id. at 693-94.

Three issues become clear from Soto.  First, the proximate cause analysis turns on whether it is

reasonably foreseeable that the claimed constitutional violation would cause a mental state that could

negate the plaintiff's volition.  Second, whether the plaintiff's mental state was actually such that he

could not appreciate the nature of his acts upon committing suicide is often a question of fact.  Third,

if the facts establish that the plaintiff could not appreciate the nature of his acts, the suicide does not

constitute a superceding, intervening event, and the defendants may be held liable for injuries sustained

as a result of the suicide.[5]

Returning to the matter at hand, the Court finds that Walsh has alleged facts sufficient to show

proximate cause, at least at this juncture.  Construing all the allegations in the light most favorable to

Walsh, it is reasonably foreseeable that the alleged failure by school administrators in addressing and

remedying Decedent's repeated complaints of severe sexual orientation based harassment over a two-

year period would cause a mental condition such that Decedent (a thirteen-year-old boy) would have

suicidal impulses.  Whether Decedent in fact developed such a mental condition or whether there was

---

[5] These principles appear to be in full accord with California tort law.  See Corales v. Bennett, 567 F.3d 554, 572-573 (9th Cir. 2009) (under California law, proximate cause is severed by the decedent's decision to commit suicide unless the defendant's negligence causes a mental condition whereby the decedent suffered an uncontrollable impulse to commit suicide) (discussing Tate v. Canonica, 180 Cal. App. 2d 898 (1960)).

a superceding event that caused Decedent to commit suicide (i.e., the harassment on the actual day of the suicide, which occurred off school property) is a matter for another day.  See Soto, 567 F. Supp. at 694.  Accordingly, the motion to dismiss Walsh's claim for the deprivation of a familial relationship is DENIED as to Ortega and Kaminski.

<b>iii.   Teachers Kirby, Haight, Kabonic, and Feehan</b>

In addition to contesting proximate cause, Kirby, Haight, Kabonic, and Feehan argue that their alleged actions cannot give rise to a claim for the deprivation of familial relations in violation of the Fourteenth Amendment.  (Doc. 8 at 15-16.)  The Court agrees with the defendants in this regard.  The conduct of Feehan and the alleged comments by Kirby, Haight, and Kabonic do not constitute conduct that "shocks the conscience."  Porter, 546 F.3d at 1137.  As explained above, the defendants' alleged conduct and comments do not even give rise to a cognizable claim for discrimination under the Equal Protection Clause.  Accordingly, Walsh's deprivation of a familial relationship claims against Kirby, Haight, Kabonic, and Feehan are DISMISSED with leave to amend.

<b>e.   Qualified Immunity</b>

The Court notes that Kirby, Haight, Kabonic, and Feehan maintain that they are all entitled to qualified immunity.  (Doc. 8 at 16-17.)  Qualified immunity shields government officials from liability for civil damages, "insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known."  Tibbetts v. Kulongoski, 567 F.3d 529, 535 (9th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  See Cousins v. Lockyer, 568 F.3d 1063, 1072 (9th Cir. 2009) (qualified immunity is a doctrine of federal common law and is not applicable to California state law claims).  Because the Court concludes that Walsh fails to state any cognizable federal statutory or constitutional claims against Kirby, Haight, Kabonic, and Feehan, but should be afforded leave to amend her allegations, the Court declines to address qualified immunity any further at this time.

**B.   STATE LAW CLAIMS**

**1.   Discretional Acts Immunity**

Swanson, Ortega, and Kaminski maintain that they are entitled to immunity from all state law claims pursuant to California Government Code section 820.2.  Section 820.2 provides: "Except as

14

otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code 820.2.

Whether a public employee is entitled to immunity for discretionary acts hinges on whether the acts or omissions in dispute constitute "basic policy decisions" or "ministerial" decisions. Caldwell v. Montoya, 10 Cal. 4th 972, 981 (1995).  "Immunity is reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government[.]'" Id. (quoting Johnson v. State of California, 69 Cal. 2d 782, 793 (1968)) (emphasis in the original).  "On the other hand . . . there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." Caldwell, 10 Cal. 4th at 981 (quoting Johnson, 69 Cal. 2d at 796)).  There is also no basis for immunizing decisions that are not actually "deliberate and considered." Caldwell, 10 Cal. 4th at 981.

In this case, the acts or omissions in dispute on the part of Swanson, Ortega, and Kaminski are their failures to investigate and discipline harassment at school.  Decisions by a school's supervisory personnel regarding disciplinary matters are generally considered "discretionary" and within the scope of section 820.2.  See Nicole M. v. Martinez Unified Sch. Dist., 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997) ("Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts."); Thompson v. Sacramento City Unified Sch. Dist., 107 Cal. App. 4th 1352, 1361 (2003) (school district's decision to expel or readmit a student is discretionary in nature and falls within discretionary acts immunity).

Nevertheless, "[t]he fact that a [public] employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not [actually] render a considered decision." Lopez v. So. Cal. Rapid Transit Dist., 40 Cal. 3d 780, 794 (1985).  Immunity under section 820.2 attaches only after the public employee "prove[s] that . . . in deciding to perform (or not perform) the act which led to [the] plaintiff's injury, [he or she] *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." Id. (emphasis in original).  Here, the facts alleged in the pleadings do not establish that Swanson, Ortega, and Kaminski consciously and deliberately weighed

15

1    various policy objectives in deciding not to investigate or discipline the alleged harassment.  Therefore,

2    the defendants will have to make that showing at a later date.  Until then, the Court finds that Swanson,

3    Ortega, and Kaminski are not entitled to immunity under section 820.2.[6]

4        **2.    Unruh Civil Rights Act**

5        Walsh asserts claims for damages against all the defendants pursuant to the Unruh Civil Rights

6    Act.  See Cal. Civ. Code § 51(a).  The Unruh Civil Rights Act provides a cause of action for intentional

7    discrimination by a business establishment.  See Cohn v. Corinthian Colleges, Inc., 169 Cal. App. 4th

8    523, 527-28 (2008).  California Civil Code section 51 provides, in relevant part: "[a]ll persons within

9    the jurisdiction of this state are free and equal, and no matter what their . . . sexual orientation [may be]

10   are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all

11   business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  Similarly, California Civil

12   Code section 51.5 provides, in relevant part: "[n]o business establishment of any kind whatsoever shall

13   discriminate against . . . any person in this state on account of [that person's sexual orientation]."  Cal.

14   Civ. Code § 51.5.

15       The California Supreme Court has determined that the Legislature intended the term "business

16   establishment" to be interpreted "in the broadest sense reasonably possible."  Isbister v. Boys' Club of

17   Santa Cruz, Inc., 40 Cal. 3d 72, 78 (1985).  Consistent with this interpretation, several federal courts

18   have concluded that a public school constitutes a "business establishment" within the meaning of the

19   Unruh Civil Rights Act.  See, e.g., Nicole M., 964 F. Supp. at 1388; Sullivan v. Vallejo City Unified

20   Sch. Dist., 731 F. Supp. 947, 952 (E.D. Cal. 1990).  Moreover, several federal courts have concluded

21   that a plaintiff's allegation that a public school failed to adequately respond to his or her complaints of

22   harassment gives rise to a cognizable claim under the Unruh Civil Rights Act.  See Davison v. Santa

23   Barbara High Sch. Dist., 48 F. Supp. 2d 1225, 1232-33 (C.D. Cal. 1998); Nicole M., 964 F. Supp. at

24   1388.  This Court follows the lead of those courts.

25

26        [6] For its part, the School District contends that if Swanson, Ortega, and Kaminski are entitled to immunity under
     California Government Code section 820.2, then it too is entitled to immunity under California Government Code section
27   815.2(b).  Section 815.2(b) provides that a public entity is not liable for injuries resulting from acts or omissions of its
     employees who are themselves immune from liability.  Cal. Gov. Code 815.2(b).  Because the Court finds that Swanson,
28   Ortega, and Kaminski are not entitled to immunity at this time, the School District is similarly not entitled to immunity under
     section 815.2(b) at this time.

Accordingly, for the reasons discussed in relation to Walsh's federal equal protection claim for failure to investigate and discipline harassment, the motion to dismiss Walsh's claims under the Unruh Civil Rights Act is DENIED as to Ortega and Kaminski, but GRANTED with leave to amend as to Kirby, Haight, Kabonic, and Feehan.  Further, in accordance with California law regarding vicarious liability, the motion to dismiss is DENIED as to the School District, see Cal. Gov. Code § 815.2(a) (a public entity is vicariously liable for injuries caused by the acts of its employees), but GRANTED with leave to amend as to Swanson, see Cal. Gov. Code § 820.8 (a public employee is not vicariously liable for injuries that are caused by the acts of another person).

**3.     California's Equal Protection Provision**

Walsh asserts a claim for damages against the School District pursuant to the equal protection provision of the California Constitution.  See Cal. Const., Art. I § 7.  However, as the School District suggests in its motion to dismiss, "[i]t is beyond question that a plaintiff is not entitled to damages for a violation of the . . . equal protection clause of the [California] state Constitution."  Javor v. Taggart, 98 Cal. App. 4th 795, 807 (2002).  See Gates v. Superior Court, 32 Cal. App. 4th 481, 516-24 (1995) (concluding that there is no evidence of any intent on the part of California's voters to permit recovery of damages under the equal protection provision).  Accordingly, Walsh's claim pursuant to the equal protection provision of the California Constitution is DISMISSED with prejudice.

**4.     California Education Code Section 220**

Walsh asserts a claim for damages against the School District pursuant to California Education Code section 220.  (See Doc. 1-4 ¶¶ 80-81.)  Section 220 provides: "[n]o person shall be subjected to discrimination on the basis of . . . sexual orientation . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."  Cal. Educ. Code § 220.  The elements for demonstrating a claim under Section 220 mirror those for a claim under Title IX.  Donovan v. Poway Unified Sch. Dist., 167 Cal. App. 4th 567, 603-09 (2008).  A plaintiff must show (1) he or she suffered severe, pervasive and offensive harassment that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; (2) the school had actual knowledge of the harassment; and (3) the school responded with deliberate indifference.  Id. at 579.  Accordingly, for the same reasons discussed in the

17

1    Court's analysis of Walsh's Title IX claim, Walsh's teacher-on-student harassment claim pursuant to

2    section 220 is DISMISSED with leave to amend.

3         **5.     Negligence and Wrongful Death**

4         Walsh asserts claims for negligence and wrongful death against all the defendants.  "In order to

5    establish negligence under California law, a plaintiff must establish four required elements: (1) duty;

6    (2) breach; (3) causation; and (4) damages."  Ileto v. Glock, Inc., 349 F.3d 1191, 1203 (9th Cir. 2003)

7    (citing Martinez v. Pacific Bell, 225 Cal. App. 3d 1557 (1990)).[7]

8              **a.     Superintendent Swanson**

9         As explained above, Walsh fails to allege any facts relating to Swanson.  Accordingly, Walsh's

10   negligence and wrongful death claims against Swanson are DISMISSED with leave to amend.  See Cal.

11   Gov. Code §§ 820.8, 820.9 (a public employee is not vicariously liable for injuries that are caused by

12   the acts of another person); Iqbal, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must

13   contain sufficient factual matter . . . to state a claim for relief that is plausible on its face.") (internal

14   quotation marks and citation omitted).

15             **b.     Teachers Kirby, Haight, Kabonic, and Feehan**

16        Walsh alleges that Kirby, Haight, Kabonic, and Feehan breached their duty to take reasonable

17   steps to protect Decedent as a student.  (Doc. 1-4 ¶¶ 94-96.)  Once again, the defendants counter that

18   Walsh fails to allege facts that plausibly establish that they breached a duty of care owed to Decedent.

19   (Doc. 8 at 18-20.)

20        "While school districts and their employees have never been considered insurers of the physical

21   safety of students, California law has long imposed on school authorities a duty to supervise at all times

22   the conduct of the children on the school grounds and to enforce those rules and regulations necessary

23   to their protection."  Dailey v. Los Angeles Unified Sch. Dist., 2 Cal. 3d 741, 747 (1970) (citations and

24   internal quotation marks omitted).  The level of care that school authorities are held to in discharging

25   this duty is the degree of care a person of ordinary prudence would exercise under the circumstances.

26   Id.  "Either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care

27

28        [7] The Court notes that all the defendants argue that Walsh fails to sufficiently allege proximate cause in order to
     establish liability for Decedent's death.  (Doc. 7 at 20-23; Doc. 8 at 20-21.)  However, for the reasons already discussed in
     the Court's analysis of Walsh's deprivation of familial relations claim, the Court finds this argument unpersuasive.

1    on the part of those responsible for student supervision" and may give rise to tort liability. Id. (internal

2    citations omitted).

3          Here, Walsh fails to allege facts showing a breach of this duty by Kirby, Haight, Kabonic, or

4    Feehan.  As explained by the Court in the context of Walsh's equal protection claims, Walsh merely

5    alleges that Kirby and Haight gossiped about Decedent; Kabonic called Decedent a name; and Feehan

6    was present, in a general sense, when other students harassed Decedent.  None of these allegations are

7    sufficient to allege the breach of a faculty member's duty to protect Decedent.  Accordingly, Walsh's

8    negligence and wrongful death claims against Kirby, Haight, Kabonic, and Feehan are DISMISSED

9    with leave to amend.

10                    **c.    The School District**

11                    **i.    Vicarious Liability**

12         Walsh claims that the School District is vicariously liable for the negligent acts and omissions

13   of its employees.  Pursuant to California Government Code section 815.2, the School District may be

14   held vicariously liable for injuries caused by the acts or omissions of its employees.  Cal. Gov. Code §

15   815.2(a).  Nevertheless, because the Court finds that Walsh fails to state cognizable negligence and

16   wrongful death claims against Kirby, Haight, Kabonic, and Feehan, Walsh's negligence and wrongful

17   death claims against the School District are DISMISSED with leave to amend to the extent that liability

18   is premised on the negligence of Kirby, Haight, Kabonic, or Feehan.

19                    **ii.    Liability for Mandatory Duties**

20         Walsh also claims that the School District is liable for failing to perform various mandatory

21   duties.  Pursuant to California Government Code section 815.6, the School District may be held liable

22   for failing to exercise reasonable diligence in discharging a duty imposed by law which is designed to

23   protect against the risk of a particular kind of injury.  Cal. Gov. Code § 815.6; see generally Haggis v.

24   City of Los Angeles, 22 Cal. 4th 490, 498-99 (2000).  Nevertheless, as indicated above, the Court finds

25   that Walsh fails to state cognizable claims for teacher-on-student harassment under Title IX and for

26   discrimination under the equal protection provision of the California Constitution.  Accordingly, to the

27   extent that Walsh premises his claims for negligence and wrongful death against the School District on

28   these grounds, the claims are DISMISSED.

1

2
**6.      Bystander Emotional Distress**

The defendants maintain that Walsh cannot recover for bystander emotional distress.  (Doc. 7

3
at 27-29; Doc. 8 at 22.)  The defendants argue that Walsh could only recover for bystander emotional

4
distress if she actually observed Decedent the moment he hung himself and committed suicide.  (Doc.

5
7 at 28.)  According to the defendants, however, Walsh did not witness the traumatic event itself, but

6
only observed its consequences.  (Id.)

7
A plaintiff may recover for emotional distress caused by observing the negligent infliction of

8
harm on a third person only if the plaintiff "(1) is closely related to the injury victim; (2) is present at the

9
scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the

10
victim; and (3) as a result suffers [serious] emotional distress[.]"  Thing v. La Chusa, 48 Cal. 3d 644,

11
667-68 (1989).  In evaluating the second requirement, courts have drawn a sharp distinction between a

12
plaintiff's contemporaneous perception of an injury-producing event (in which case the plaintiff may

13
recover for bystander emotional distress) and a plaintiff's mere observance of the consequences of an

14
injury-producing event (in which case the plaintiff may not recover for bystander emotional distress).

15
"It is the traumatic effect of the perception of the infliction of injury on a closely related person . . . that

16
is actionable, not the observation of the consequences of the occurrence[.]"  Ra v. Superior Court, 154

17
Cal. App. 4th 142, 152 (2007).

18
For example, in Thing, a mother was informed by her daughter that her son had been stuck by

19
a car.  Thing, 48 Cal. 3d at 647.  The mother rushed to the scene of the accident, where she found her

20
son bloody and unconscious.  Id.  In fact, the mother believed that her son was dead.  Id.  The mother

21
later sued the driver for negligent infliction of emotional distress.  Id. at 648.  The Supreme Court of

22
California found that the mother could not establish such a claim.  The claim failed because the mother

23
was not present at the scene of the car accident when it happened, did not witness her son being injured,

24
and only observed the aftereffects of the car accident.  Id. at 669.  In other words, the mother did not

25
contemporaneously perceive the injury-producing event.

26
That is not to say, however, that a plaintiff may only recover damages for bystander emotional

27
distress if he or she is present at the initial moment of impact causing the injury.  An injury-producing

28
event may continue over an extended period of time.  See Ortiz v. Hpm Corp., 234 Cal. App. 3d 178,

Case 1:11-cv-01489-LJO -JLT   Document 18   Filed 10/28/11   Page 21 of 26

185 (1991).  For example, in <u>Ortiz</u>, the plaintiff discovered her husband trapped in a plastic injection molding machine.  <u>Id.</u> at 182.  The machine was still running and pressing against the husband's chest. <u>Id.</u>  Blood was dripping down the man's arm, his body was limp, and he did not appear to be breathing. <u>Id.</u>  In these circumstances, the court ruled that the plaintiff could recover for emotional distress as a bystander despite the fact that she had not witnessed her husband's initial fall into the machine.  The court distinguished <u>Thing</u>, explaining that bystander emotional distress damages may not be recovered by a plaintiff who reaches the scene of an accident *after* the event, but may be recovered by a plaintiff who reaches the scene *while* the accident is still ongoing.  <u>Id.</u> at 185.

The factual allegations in this case present a close call.  The defendants attempt to analogize the facts in this case to those in <u>Thing</u>.  The defendants characterize Decedent's hanging as a momentary event and argue that Walsh arrived only after the injury-producing event was complete.  Walsh, on the other hand, characterizes the hanging as an ongoing event similar in nature to the events presented in <u>Ortiz</u>.  According to Walsh, she arrived at the scene when Decedent was still alive and choking.  (Doc. 1-4 ¶ 110.)  Because the Court must construe the facts alleged in the light most favorable to Walsh at this stage, the Court concludes that Walsh has sufficiently plead that she contemporaneously perceived the injury-producing event.  Accordingly, the motions to dismiss Walsh's claim for bystander emotional distress are DENIED.

**C.    DAMAGES**

**1.    Decedent's Emotional Distress**

The defendants maintain that as a successor-in-interest, Walsh may not recover damages for Decedent's emotional distress.  (Doc. 7 at 31; Doc. 8 at 22.)  The defendants argue that such damages may not be recovered under Walsh's state law claims because California's survival statute bars their recovery.  (Doc. 7 at 31.)  The defendants also argue that such damages may not be recovered under Walsh's federal claims because neither § 1983 nor Title IX discusses survival.  (<u>Id.</u>)  Therefore, in the defendants' view, California's survival statute applies to Walsh's federal claims and bars Walsh from recovering damages for Decedent's emotional distress.  (<u>Id.</u>)

California's survival statute provides: "[i]n an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable . . .

21

do not include pain, suffering, or disfigurement." Cal. Code Civ. Proc. § 377.34.  Thus, it is clear that Walsh may not recover damages for Decedent's emotional distress under the state law claims Walsh brings as Decedent's successor-in-interest.

Less clear is whether Walsh may recover damages as the successor-in-interest for Decedent's emotional distress under § 1983.  "Section 1983 does not address survivor claims or any appropriate remedies."  Provencio v. Vazquez, 1:07-CV-0069 AWI TAG, 2008 U.S. Dist. LEXIS 73255, at *31 (E.D. Cal. Aug. 18, 2008).  Therefore, courts must look to state law, to the extent that state law is not inconsistent with the Constitution and the laws of the United States.  See 42 U.S.C. § 1988; Robertson v. Wegmann, 436 U.S. 584, 590 (1978).  In doing so, courts must remain mindful that the purpose of the Federal Civil Rights Act is to (1) deter official illegality, and (2) adequately compensate parties for injuries caused by the depravation of constitutional rights.  See Robertson, 436 U.S. at 592; Carey v. Piphus, 435 U.S. 247, 254 (1978).

Federal courts in the Eastern District of California have generally concluded that California's survival statute applies to actions brought under § 1983 and bars recovery of emotional distress by a successor-in-interest.  See Estate of Contreras v. County of Glenn, 725 F. Supp. 2d 1151, 1155 (E.D. Cal. 2010) (gathering cases).  The courts that have discussed the issue have reasoned that disallowing the recovery of emotional distress would not meaningfully diminish the deterrent effect of a § 1983 action.  Venerable v. City of Sacramento, 185 F. Supp. 2d 1128, 1131-33 (E.D. Cal. 2002).  Moreover, courts have concluded that applying California's bar against the recovery of emotional distress would not deny an injured party compensation because parties may still recover damages through a wrongful death action.  See Provencio, 2008 U.S. Dist. LEXIS 73255 at *34-35.  This Court finds all the above persuasive and concludes that Walsh may not recover Decedent's emotional distress under § 1983 as a successor-in-interest.

The final matter, then, is whether Walsh may recover damages as the successor-in-interest for Decedent's emotional distress under Title IX.  Title IX is also silent as to survivor claims.  Therefore, the defendants argue once again that the Court should borrow and apply California's survivor statute.  Walsh fails to address the issue.  Because the matter is uncontested and the Court has not been able to find any case law stating that California's survival statute is inconsistent with the purposes of Title IX,

1   the Court finds that Walsh is barred from recovering Decedent's emotional distress as a successor-in-

2   interest under Title IX.

3        Accordingly, for the reasons set forth above, Walsh's prayer for damages relating to Decedent's

4   emotional distress is DISMISSED with prejudice.

5        **2.**    **Decedent's Medical Expenses**

6        The defendants contend that Walsh may not recover Decedent's medical expenses because the

7   defendants did not cause Decedent's death.  (Doc. 7 at 32; Doc. 8 at 20-21.)  However, as explained

8   above, the Court finds that Walsh has sufficiently alleged proximate cause to support her claims for the

9   deprivation of familial relations under the Fourteenth Amendment and for negligence under California

10   state law.  Under either claim, Walsh may recover the medical expenses that were incurred as a result

11   of Decedent's suicide.  Accordingly, the motions to dismiss are DENIED on this matter.

12        **3.**    **Punitive Damages**

13        The defendants contend that Walsh fails to allege facts that could support an award of punitive

14   damages.  (Doc. 7 at 32-33; Doc. 8 at 22-23.)  The defendants reiterate that Walsh (1) alleges no facts

15   with respect to Swanson; (2) simply disagrees with Ortega's and Kaminski's responses to the alleged

16   harassment of Decedent; (3) at most indicates that Feehan acted negligently in his supervision of the

17   students; and (4) merely alleges that Kirby, Haight, and Kabonic made stray remarks about Decedent.

18   (Doc. 7 at 32-33; Doc. 8 at 22-23.)

19        A plaintiff may recover punitive damages under § 1983 against an individual defendant whose

20   conduct is "shown to be motivated by evil motive or intent, or when [the conduct] involves reckless or

21   callous indifference to the . . . rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Conduct that

22   is shown to be "oppressive" will also suffice.  Dang v. Cross, 422 F.3d 800, 807-08 (9th Cir. 2005).

23   Here, as explained above, the Court finds that Walsh states cognizable claims under § 1983 against

24   Ortega and Kaminski for, among other things, responding with deliberate indifference to Decedent's

25   complaints of sexual harassment.  Moreover, Walsh alleges that in violating Decedent's constitutional

26   rights, the defendants acted maliciously and with conscious disregard to the rights of Decedent.  (Doc.

27   1-4 ¶¶ 71, 77.)  At this juncture, the Court finds this sufficient to support Walsh's prayer for punitive

28   damages.  Accordingly, the motions to dismiss are DENIED on this matter.

**D.      OTHER MATTERS**

Finally, the Court notes that Kirby, Haight, Kabonic, and Feehan move to dismiss the claims asserted against them on other grounds.  Specifically, Kirby, Haight, and Kabonic argue that their stray remarks are protected speech under the First Amendment.  (Doc. 8 at 12-13.)  Kirby, Haight, Kabonic, and Feehan also argue that Walsh fails to allege compliance with the presentation requirement of the California Torts Claims Act.  (Id. at 21-22.)  Because the Court has already concluded that Walsh fails to allege sufficient facts to state any cognizable claims against Kirby, Haight, Kabonic, or Feehan, the Court declines to address these alternative arguments at this time.

**IV. CONCLUSION**

In accordance with the above, this Court:

1.      GRANTS IN PART and DENIES IN PART the motions to dismiss as follows:

     a.      The Title IX teacher-on-student harassment claim against the School District is DISMISSED with leave to amend;

     b.      All claims against Swanson are DISMISSED with leave to amend;

     c.      The motion to dismiss Walsh's equal protection claims under the Fourteenth Amendment for failure to investigate and discipline harassment is DENIED as to Ortega and Kaminski;

     d.      The equal protection claims under the Fourteenth Amendment against Feehan, Kirby, Haight, and Kabonic for failure to investigate and discipline harassment are DISMISSED with leave to amend;

     e.      The equal protection claims under the Fourteenth Amendment against Haight, Kirby, and Kabonic for sexual harassment and discrimination are DISMISSED with leave to amend;

     f.      The motion to dismiss Walsh's claims under the Fourteenth Amendment for the deprivation of familial relations is DENIED as to Ortega and Kaminski;

     g.      The claims against Kirby, Haight, Kabonic, and Feehan for the deprivation of familial relations under the Fourteenth Amendment are DISMISSED with leave to amend;

h.   The motion to dismiss Walsh's Unruh Civil Rights Act claims is DENIED as to Ortega and Kaminski;

i.   The Unruh Civil Rights Act claims against Kirby, Haight, Kabonic, and Feehan are DISMISSED with leave to amend;

j.   To the extent Walsh asserts a claim under the equal protection provision of the California Constitution, the claim is DISMISSED with prejudice;

k.   The teacher-on-student harassment claim under California Education Code 220 is DISMISSED with leave to amend;

l.   The negligence and wrongful death claims against Kirby, Haight, Kabonic, and Feehan are DISMISSED with leave to amend;

m.   The negligence and wrongful death claims against the School District are:

    i.   DISMISSED with leave to amend to the extent that liability is grounded on vicarious liability for the negligent acts of Kirby, Haight, Kabonic, and Freehan;

    ii.   DISMISSED with leave to amend to the extent that liability is grounded on the School District's failure to discharge its duties under Title IX; and

    iii.   DISMISSED with prejudice to the extent that liability is premised on the School District's failure to discharge its duties under the equal protection provision of the California Constitution.

n.   The motions to dismiss Walsh's claims for bystander emotional distress are DENIED;

o.   Walsh's prayer to recover damages for Decedent's emotional distress as the successor-in-interest is DISMISSED with prejudice;

p.   The motions to dismiss Walsh's prayer for medical expenses incurred as a result of Decedent's suicide are DENIED; and

q.   The motions to dismiss Walsh's prayer for punitive damages are DENIED.

2.   ORDERS that if Walsh elects to file a second amended complaint, she shall do so by

25

November 11, 2011.  Walsh should refrain from filing an amended pleading unless she is able to adequately address the deficiencies identified in this order.  Should Walsh file an amended pleading, Walsh should consider it to be her last attempt.  Further, should that occur, the defendants are cautioned to file an attack on the pleading only if it is strong and substantive.  This Court simply no longer has the resources to revisit pleadings repeatedly.

<u>IT IS SO ORDERED.</u>

**Dated:     October 27, 2011**                              /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE

26