Daniel Rodriguez, Esq., SBN 096625
Joel T. Andreesen, Esq., SBN 152254
John A. Kawai, Esq., SBN 260120
**RODRIGUEZ & ASSOCIATES**
**A Professional Law Corporation**
2020 Eye Street
Bakersfield, CA  93301
Phone: (661) 323-1400   Fax: (661) 323-0132

Attorneys for Plaintiffs WENDY WALSH, individually
and as Successor-in-Interest to SETH WALSH, Deceased;
and Sh.W., a minor, by his Guardian ad Litem,
WENDY WALSH.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased; and Sh.W., a minor, by his Guardian ad Litem, WENDY WALSH,<br><br>         Plaintiffs,<br>   vs.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT; SUSAN ORTEGA; MR. KAMINSKY; and DOES 1 through 100, Inclusive,<br><br>      Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  1:11-CV-01489-LJO-JLT<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br><br><br><br><br>Complaint Filed: July 5, 2011<br>Trial Date: July 9, 2013 |

Plaintiff WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased ("Decedent"); and Plaintiff Sh.W., a minor, by his Guardian ad Litem, WENDY WALSH, allege as follows:

## JURISDICTION AND VENUE

1.     By this Complaint Plaintiff WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased ("Decedent"); and Plaintiff Sh.W., in his individual capacity, seek compensation for:

     (a)     FIRST CAUSE OF ACTION: In WENDY WALSH's capacity as Decedent's successor in interest, for Failure to Prevent the Student-on-Student Harassment of Decedent on the Basis of Decedent's Sex, Gender, and Sexual Orientation, in Violation of Decedent's rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 – 1688, pursuant to Davis Next Friend LaShonda D. v. Monroe County Board of Education, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (student-on-student sexual harassment), and Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130 (9th Cir. 2003) (students' right under Title IX to be free from discrimination on the basis of sexual orientation was clearly established), against Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.

     (b)     SECOND CAUSE OF ACTION: In WENDY WALSH's capacity as Decedent's successor in interest, for Violation of Decedent's Rights under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009),

against Defendants SUSAN ORTEGA and MR. KAMINSKY, in their individual capacities only.

(c)     THIRD CAUSE OF ACTION: In WENDY WALSH's individual capacity, for the Violation of Defendants of Plaintiff's own rights under the First and Fourteenth Amendments to the United States Constitution to a familial relationship and companionship with Decedent, resulting in the death of Decedent and the termination of said relationship, pursuant to 42 U.S.C. §§ 1983, 1988, against  Defendants SUSAN ORTEGA and MR. KAMINSKY, in their individual capacities only.

(d)     FOURTH CAUSE OF ACTION: In WENDY WALSH's capacity as Decedent's successor in interest, for Violation of the Unruh Civil Rights Act, California Civil Code § 51, and/or California Civil Code § 51.5, against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.

(e)     FIFTH CAUSE OF ACTION: In WENDY WALSH's capacity as Decedent's successor in interest, for Negligence, pursuant to California Government Code §§ 815.2, 815.6, 820, against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.

(f)     SIXTH CAUSE OF ACTION: In WENDY WALSH's individual capacity, for Wrongful Death under California Law, pursuant to California Government Code §§ 815.2, 815.6, 820, against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.

(g)     SEVENTH CAUSE OF ACTION: In WENDY WALSH and Sh.W.'s individual capacities, for Bystander Emotional Distress under California Law, pursuant to California Government Code §§ 815.2, 815.6, 820, against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.

The Court has jurisdiction over Plaintiffs' federal civil rights claims under 42 U.S.C. §§ 1983, 1988, pursuant to 28 U.S.C. §§ 1331, 1343.  The Court has supplemental jurisdiction over Plaintiffs' California state law claims pursuant to 28 U.S.C. § 1367(a).

2.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because: (i) a substantial part of the events or omissions giving rise to the Complaint occurred in this judicial district; and (ii) Defendants reside within this judicial district.

## PARTIES AND OTHER RELEVANT ACTORS

3.     As alleged more fully below, this Complaint arises out of the harassment of Decedent SETH WALSH which actually, legally and proximately caused his subsequent death.  Plaintiff WENDY WALSH is Decedent's mother, and asserts this Complaint: (a) in her capacity as Successor in Interest of Decedent, pursuant to California Code of Civil Procedure § 377.20 et seq. and 42 U.S.C. § 1988; (b) in her individual capacity, for the wrongful death of Decedent, pursuant to 42 U.S.C. §§ 1983, 1988 and California Code of Civil Procedure § 377.60; and (c) in her individual capacity for the negligent infliction of bystander emotional distress.  Plaintiff Sh.W. is Decedent's brother, and asserts this Complaint in his individual capacity for the negligent infliction of bystander emotional distress under California law.  Plaintiff died without a spouse, domestic partner, children or issue.

4.      Roger J. Coulter was Decedent's father.  However, Roger J. Coulter does not have standing to assert any claims (a) in a capacity as a Successor in Interest of Decedent, or (b) in his individual capacity for the wrongful death of Decedent, because pursuant to the Judgment of Dissolution of Marriage of Wendy Y. Coulter, Petitioner, and Roger J. Coulter, Respondent, Kern County Superior Court Case No. S-1501-FL-573329, entered on September 16, 2005, Roger J. Coulter signed off all rights to Decedent to Plaintiff WENDY WALSH (formerly Wendy Y. Coulter).

5.      Decedent SETH WALSH was born on February 12, 1997. At all relevant times herein, Decedent SETH WALSH was: (a) a minor male and a student enrolled in Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; and (b) gay (i.e., homosexual), and was perceived by all Defendants, students, and other relevant persons to be gay.

6.      At all relevant times herein, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT: (a) was a political subdivision of the State of California; and (b) received federal financial assistance, within the meaning of 20 U.S.C.A. § 1681(a), both generally and specifically with respect to the programs and activities at Jacobsen Middle School. Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is statutorily liable under California law pursuant to: (a) California Government Code §§ 815.2 for the negligent conduct of Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive; (b) California Government Code § 815.6 for its own breaches of mandatory duties.

7.      At all relevant times herein Defendant SUSAN ORTEGA was: (a) the Principal of Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

8.      At all relevant times herein Defendant MR. KAMINSKY was: (a) the Vice Principal of Jacobsen Middle School; and (b) an employee and agent of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT. Said Defendant is statutorily liable under California law pursuant to California Government Code § 820.

9.      Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names.  At all relevant times herein, Defendants DOES 1 through 100, inclusive, were: (a) officers and agents of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; (b) employed as principals, deans, counselors, teachers, security guards or other employees at Tehachapi High School, a high school within, and under the jurisdiction and control of, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT; and (c) acting within the scope of such agency and employment.  With respect to the claims alleged herein under 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, said Defendants are sued in, and only in, their individual capacities pursuant to, inter alia, Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991). Plaintiffs will amend this Complaint to allege the true names and capacities when ascertained.  Plaintiffs are informed and believe and on that basis allege that each of the fictitiously named Defendants is liable in the manner set forth below for the acts, conduct and/or omissions concerning the events and happenings herein referred to, which proximately caused the damages and injuries to Plaintiffs as alleged herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Compliance With Claims Filing Requirements

10.    Plaintiff WENDY WALSH has complied with the California Tort Claims Act, California Government Code § 910 et seq., and the claims requirement of the California

Sex Equity in Education Act, codified collectively at California Education Code §§ 221.5 - 231.5, and particularly California Education Code § 262.3(c), (d).

11.     Plaintiff Sh.W. presented an application for leave to present late claim under California Government Code § 911.4 to the Tehachapi Unified School District on September 16, 2011.  Tehachapi Unified School District has agreed by stipulation dated April 16, 2012 that Sh.W. need not obtain an order of relief under California Government Code § 946.6(c) to pursue his state law claim of Negligent Infliction of Emotional Distress stemming from the events of September 19, 2010 in this case.

## The Harassment Of Plaintiff

12.     At all relevant times herein, many witnesses characterized Decedent as somewhat effeminate, with occasionally exaggerated mannerisms and speech.  Decedent dressed in stereotypically female clothing and shoes, such as skinny jeans, pedal pushers, scarves, and v-neck t-shirts; carried backpacks with designs not typically favored by middle school boys, such as Hello Kitty; and frequently changed the color and style of his hair.  Throughout elementary and middle school, most of his friends were girls. Beginning in sixth grade, Decedent informed people that he was gay.

13.     The harassment of Decedent dated back to elementary school.  When Decedent was in fifth grade his mother, Plaintiff, complained to Decedent's principal and teacher about his peers' treatment of Decedent, including calling him "fag," "faggot," "homo," "gay," "queer," "sissy," "pussy," "emo," "pansy," and "girl" as pejorative terms. Other students told Decedent that he "should burn in hell" or "kill himself."  Male students went up to Decedent and told Decedent it was "gross" and "wrong" to be gay. One student constantly referred to Decedent as "it." Students teased Decedent because his friends were girls and by saying Decedent acted like a girl.

14.     Decedent began attending Jacobsen Middle School in 2008 – 2009, when he entered the sixth grade.  The harassment of Decedent intensified that year.  Decedent's peers routinely called Decedent names like those alleged above, pushed Decedent into lockers, and mocked him.

15.     At Jacobsen Middle School, the Principal, Defendant SUSAN ORTEGA, and Vice Principal, Defendant MR. KAMINSKY, were the individuals designated to investigate complaints of sexual, gender based, and other types of harassment.  When Decedent was in sixth grade, either Decedent or one of his classmates reported to the Vice Principal, Defendant MR. KAMINSKY, that Decedent was being harassed by his peers.  After asking Decedent about the reported problems, the Vice Principal, Defendant MR. KAMINSKY, did not take further action.

16.     At the end of Decedent's sixth grade year, Plaintiff met with the Vice Principal, Defendant MR. KAMINSKY, to express concern about harassment Plaintiff anticipated the next year, particularly in the physical education (P.E.) locker rooms.  The Vice Principal, Defendant MR. KAMINSKY, indicated that he was aware of the problems Decedent was experiencing, but did not otherwise take any action.  The Vice Principal, Defendant MR. KAMINSKY, responded to Plaintiff that, in a perfect world, Decedent would be treated equally, but that students were at a difficult age and he could not change attitudes originating in the students' homes**.**

17.     The harassment Decedent was experiencing became unbearable for him beginning in seventh grade.  Throughout Decedent's attendance at Jacobsen Middle School, but particularly in seventh grade, Decedent's peers routinely called Decedent hostile and demeaning names related to his nonconformity with gender stereotypes and sexual orientation, including "sissy," "girl," and vulgar references to female anatomy; insults meant to question his masculinity, including mocking his clothing as "girly," asking

him, "do you sit down" to use the restroom, suggesting he should "get surgery" to become a female, and referring to him as the "girlfriend" of other male students; and anti-gay slurs and epithets.

18.     Peers used language against Decedent of a hostile and demeaning sexual nature, including derogatory remarks related to sex between men and crude questions about sexual acts and behavior in which they suggested Decedent had engaged.  Decedent was teased for being attracted to another boy at school.  A male classmate asked Decedent out on a date as a joke.  Peers spread hostile and patently false sexual rumors about Decedent.

19.     Peers also physically harassed Decedent.  Peers bumped Decedent out of the way when he was walking; hit items such as food out of Decedent's hands; obstructed Decedent's path as he tried to walk by; threw food, water bottles, pencils and erasers at Decedent, shoved Decedent, and subjected Decedent to unwanted physical conduct of a sexual nature.  This physical conduct was often accompanied by verbal comments such as those alleged above.  Peers grabbed Decedent from behind while suggesting that Decedent would be sexually gratified by the contact.  A peer attempted to shove a pencil up the seat of Decedent's pants.

20.     Decedent suffered this conduct on school grounds on a daily basis.  As a result, Decedent avoided certain areas of campus where harassment tended to occur. Decedent would frequently roam the hallways during breaks, a time when other students were socializing, and take other measures to avoid harassment.  Decedent often went to the library for the same purpose.  Harassment of Decedent was widespread and perpetrated  by dozens of individuals.

21.     Decedent was often mocked and demeaned by his peers when he was not present.  A common way to describe something as undesirable was, "that's gay, but not as

gay as [Decedent]."  The negative manner in which Decedent was discussed and referred to by others, even when he was not present, had an adverse impact on the environment because it affected the way students treated Decedent when he was present.  Some students did not want to sit or be near Decedent. Two students had friends who ceased to associate with them because they were friends with Decedent.  Another student was told not to communicate with Decedent because Decedent was "evil."

22.     Some of the most personally demeaning and hostile incidents, including incidents of physical harassment and assault, regularly occurred in the P.E. locker room. When Decedent was in the seventh and eighth grades, peers often shouted insulting words about him in the locker room, including anti-gay slurs and comments suggesting that, because Decedent was gay, he would try to engage in inappropriate sexual conduct with them.  Peers yelled out derogatory comments about Decedent to the P.E. teacher.  A male peer threatened to rape Decedent.  Classmates pulled down Decedent's pants in the locker room.  As a result, Decedent would change his clothes in a corner, and sometimes in a bathroom stall, and at one point ceased to change into clothes for P.E. at all.  During P.E. classes, male students did not want to partner with Decedent. When one female partnered with Decedent, many classmates called out insults to both of them.

23.     `Toward the beginning of Decedent's seventh grade year, Plaintiff called the Principal, Defendant SUSAN ORTEGA, and threatened to press criminal charges against the students involved if the harassment did not stop.  Decedent's grandmother, who was then a school board member, told the Principal, Defendant SUSAN ORTEGA, that Decedent was being harassed the first time the grandmother met the Principal, Defendant SUSAN ORTEGA.

24.     Beginning the first week of November 2009, at Plaintiff's request and in direct response to the harassment, Decedent was placed on independent study.  The Vice

Principal, Defendant MR. KAMINSKY, acknowledged that Plaintiff told him that it was because of peer harassment.

25.     While Plaintiff was on campus with Decedent to pick up his belongings after Decedent entered the independent study program, she heard another student yell "queer" at Decedent from inside a classroom.  Plaintiff personally escorted the student to the office and reported the incident.

26.     On or about January 27, 2010, after several weeks of independent study, Decedent returned to Jacobsen Middle School.  The following day, Plaintiff called the Principal, Defendant SUSAN ORTEGA, to report problems Decedent was experiencing with other students.  Defendant SUSAN ORTEGA's handwritten notes from her conversation with Plaintiff read: "[Decedent] is homosexual – mom took out of school – is being harassed daily."  Upon investigation, the offending student indicated that he made the comment: (a) to Decedent at the urging of another student; and (b) in front of several students.  Despite this, the Principal, Defendant SUSAN ORTEGA, did not speak with the other student who was implicated, or the students who heard the comment.

27.     On two occasions during Decedent's seventh grade year, one of Decedent's friends escorted Decedent to the main office to seek help from a counselor in dealing with the harassment.  Decedent talked with the Vice Principal, Defendant MR. KAMINSKY, on both occasions.

28.     The Vice Principal, Defendant MR. KAMINSKY, acknowledged that Plaintiff called him two or three times and met with him in his office to report incidents.  Plaintiff expressed frustration that Decedent was still being harassed by students at the school.

29.     Decedent's P.E. teacher called Plaintiff to report that Decedent was not changing into his clothes for P.E. class, and Plaintiff explained to the teacher that Decedent was not changing into his clothes due to harassment in the locker room.  Plaintiff expressed frustration during this call that the school was not working with Decedent.  The P.E. teacher advised her co-teacher, who supervised the boy's locker room, of the conversation, but did not take any further action.  The P.E. teacher ignored the harassment.

30.     A teacher, Ms. Kirby, told a student that she and other teachers had taken bets about when Decedent would "come out" as gay.

31.     Another teacher, Ms. Haight, told a student that she wanted to ask Decedent and his boyfriend what was "wrong" with them.

32.     Yet another teacher, Ms. Kabonic, called Decedent "fruity" in front of an entire classroom full of students.

33.     Harassment of Decedent by other students took place during study hall and in the boy's locker room, where teachers, including Mr. Feehan, were present. Said teachers, including Mr. Feehan, took no action to protect Decedent, halt the harassment of Decedent or remedy the situation.

34.     A few days after Decedent started his eighth grade year at Jacobsen Middle School, another student took Decedent's headphones and tore them apart.

35.     As reported by other students and peers, the harassing conduct was so prevalent and obvious that the responsible adults must have known and, indeed, witnessed it.

36.     Security officers heard comments and saw physical conduct directed at Decedent, but ignored it.  The Vice Principal, Defendant MR. KAMINSKY, turned away without responding after hearing a student call Decedent an anti-gay slur.

37.     One security guard admitted that he was aware that students "picked on" Decedent.

38.     Another security officer admitted that she learned of negative comments made by students to and about Decedent.

39.     In at least three particular classrooms, Decedent was regularly taunted by peers.  In one of these classrooms, it was reported that the some of the students "despised" Decedent and made vulgar comments to him.

40.     One of Decedent's teachers would mock him in class by, for example, pointing to a picture of something ugly and suggesting it resembled Decedent.  Other teachers did not engage with Decedent the same way they did with other students.  Another teacher had a conversation with a classmate during which the teacher made fun of gay people and mentioned Decedent by name.  Yet another teacher would make negative comments directly to Decedent; for example, when Decedent raised his hand and said he needed help, the teacher responded, "That's right, you do need help."

41.     As an actual, legal and proximate result of such harassment, Decedent's grades dropped precipitously.   During Decedent's sixth grade year, Decedent passed all of his classes and achieved grades of A and B in several of them; he finished the year with a GPA of 2.95.  By the end of the seventh grade year, Decedent's GPA had dropped to 1.47; in the last quarter, Decedent received a D grade in two courses and an F grade in three.  On or about February 5, 2010, the school sent Plaintiff a notice that Decedent was in danger of

not being promoted to eighth grade.  The harassment continued for the remainder of
Decedent's seventh grade year.

42.     Decedent was miserable during his first two weeks of eighth grade. On or
about September 1, 2010, Plaintiff met with the Principal, Defendant SUSAN ORTEGA, to
request that Decedent again be placed on independent study.  The Principal, Defendant
SUSAN ORTEGA, was aware of the reasons for the request.  **Indeed, under the
"rationale for placement" section of the form Plaintiff wrote "sexual orientation
ridicule."  The form was signed by the Principal, Defendant SUSAN ORTEGA.**  The
Principal, Defendant SUSAN ORTEGA, understood that peer harassment was the reason
why Decedent was placed on independent study.  The Vice Principal, Defendant MR.
KAMINSKY, was also aware that peer harassment was the reason why Decedent was
placed on independent study.

43.     The Principal, Defendant SUSAN ORTEGA, approved the placement of
Decedent on independent study because of "sexual orientation ridicule" and peer
harassment without suggesting any alternative means of addressing the environment for
Decedent at the school.  Neither the Principal, Defendant SUSAN ORTEGA, nor the Vice
Principal, Defendant MR. KAMINSKY, took any steps following the meeting to
investigate or respond to the harassment.  The Vice Principal, Defendant MR.
KAMINSKY, concluded that, although the Principal, Defendant SUSAN ORTEGA, told
him Decedent was being placed on independent study because Decedent was being
harassed, and the Vice Principal, Defendant MR. KAMINSKY, did not doubt that the
harassment was happening, additional investigation was not needed because Decedent was
no longer attending school.  **Thus, Defendant TEHACHAPI UNIFIED SCHOOL
DISTRICT's "solution" to the long, ongoing, consistent, continuous and unrelenting
harassment of Decedent was to allow Decedent to be harassed to the point where he**

**was forced to leave school, at which point it was Defendant's opinion that the harassment would no longer be Defendant's problem.**

44.     Decedent's teachers were not informed of the reason for Decedent's placement on independent study in either the 2009 - 2010 school year or the 2010 – 2011 school year.  Decedent's teachers were never asked whether they had witnessed Decedent having problems, nor did any administrator ever suggest that the teachers be vigilant about possible harassment or take any other measures on Decedent's behalf.

## The Death Of Decedent

45.     On or about September 19, 2010, Decedent and a female friend had an encounter with a student from Jacobsen Middle School and three students from Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT's high school.  Decedent was threatened, taunted, followed and physically assaulted.

46.     On the afternoon of on or about September 19, 2010, as an actual, legal and proximate result of **all** of the harassment alleged herein, and as an actual, legal and proximate result of **all** of the intentional, reckless, deliberately indifferent, negligent and other wrongful acts and omissions of Defendants, and each of them, alleged herein, Decedent hanged himself from a tree. Decedent was discovered and cut down by his mother and his younger brother.  Thereafter, Decedent suffered and incurred medical expenses. After being in a coma for over a week, Decedent died on or about September 28, 2010.

47.     Prior to hanging himself, Decedent wrote a letter to his mother and siblings. The letter reads, in total:

I love you.  Thank you for having me.  It's been a pleasure.  I know this will bring much pain. But I will hopefully be in a better place than this s**t hole. Please, put my body in burial and visit my used body.  And make sure to make the school feel like s**t for bringing you this sorrow.  This life was a pleasure, mostly having you guys to bring me through the pain.  Hopefully I become the universe.

### <u>Notice To Defendants</u>

48.    The harassment of Decedent was in plain sight, occurring in hallways and other common areas, P.E. classes, during breaks, and was widespread and well-known to students and staff.  In addition, as a matter of law Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT had notice of, and thus a duty to respond to, harassment of which it reasonably should have known; that is, harassment about which it would have learned if it had exercised reasonable care or made a reasonably diligent inquiry.  In Decedent's situation, the obvious nature of the harassment was sufficient to put Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT on notice that it was occurring.

49.    In addition, as alleged above, officials of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT, including two administrators specifically designated to respond to sexual and gender-based harassment complaints, received actual notice of the conduct via multiple reports made by Plaintiff and Decedent.  These included reports to the Vice Principal by both Plaintiff and Decedent during Decedent's sixth-grade year and at various points during his seventh-grade year; reports to the Principal by Plaintiff and Decedent's grandmother during his seventh-grade year; reports to both the Principal and the Vice Principal made at the time of, and stated as the basis for, Decedent's placement on independent study in both seventh and eighth grade, as well as upon Decedent's return from independent study in the seventh grade; visits by Decedent to the main office on at

least two occasions during his seventh-grade year; Decedent's report to his P.E. teacher; and the direct observation and discipline report by a security officer.

## The Department Of Education And The Department Of Justice Investigation

50.    Based on an administrative complaint Decedent's mother, Plaintiff WENDY WALSH, made on October 28, 2010, both the Civil Rights Division of the U.S. Department of Justice and the Office for Civil Rights of the U.S. Department of Education conducted an investigation regarding the treatment of Decedent SETH WALSH by Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT and its officers, agents and employees.  The Case Numbers are DOJ Case No. DJ 169-11E-38 amd OCR Case No. 09-11-1-31.   The "Student" referred to in said report is Decedent SETH WALSH. The "District" referred to in said report is Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.  The "School" referred to in said report is the Jacobsen Middle School.

51.    By letter and report dated June 30, 2011, both the U.S. Department of Justice and the U.S. Department of Education stated and concluded:

> Based on the evidence gathered, OCR and DOJ (collectively, the "United States") concluded the District violated Title IX of the Education Amendments of 1972 (Title IX) and it's implementing regulations and Title IV of the Civil Rights Act of 1964 (Title IV).  Specifically, the United States found that the Student suffered sexual and gender-based harassment by his peers, including harassment based on his nonconformity with gender stereotypes; that the harassment was sufficiently severe, pervasive, and persistent to interfere with his educational opportunities; and that despite having notice of the harassment, the District did not adequately investigate or otherwise respond to it.[1]

[1]     DOJ further finds that the District's failure to adequately investigate or otherwise respond to the harassment constitutes deliberate indifference.

The letter and report further concluded:

> Based on the above facts and analysis, the United States concludes that the Student was subjected to persistent, pervasive, and often severe sex-based harassment that resulted in a hostile educational environment of which the District had notice, and that the district failed to take steps sufficient to stop the harassment, to prevent its recurrence, or to eliminate the hostile environment.  Although the District's Sexual Harassment Policy and Regulation are consistent with the law with respect to sexual harassment, the District did not adhere to its own policy in addressing the multiple forms of notice it receive with regard to the treatment of the Student.

> In order to resolve the District's identified noncompliance with Title IX and Title IV, the District voluntarily entered into the attached Resolution Agreement.  The United States has determined that, when implemented, the Resolution Agreement will resolve the issues in this complaint.  Therefore, the United States in closing this complaint as of the date of this letter. The United States will monitor the implementation of the enclosed Resolution Agreement and may reopen the investigation if the District does not comply with the Agreement.

///

///

## FIRST CAUSE OF ACTION

**Failure to Prevent the Student-on-Student Harassment of Decedent on the Basis of Decedent's Sex, Gender, and Sexual Orientation, in Violation of Decedent's rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 – 1688, pursuant to <u>Davis Next Friend LaShonda D. v. Monroe County Board of Education</u>, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (student-on-student sexual harassment), and <u>Flores v. Morgan Hill Unified School Dist.</u>, 324 F.3d 1130,  (9th Cir. 2003) (students' right under Title IX to be free from discrimination on the basis of sexual orientation was clearly established).**

**[By Plaintiff WENDY WALSH In Her Capacity As Decedent's Successor In Interest Against Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT.]**

52.     Plaintiff realleges and incorporates by reference paragraphs 1 through 51, inclusive, as though fully set forth herein.

53.     Plaintiff WENDY WALSH asserts this cause of action in her capacity as the successor in interest of Decedent SETH WALSH.

54.     In engaging in and performing the acts, omissions and conduct alleged above, and satisfying the test set forth in <u>Davis Next Friend LaShonda D. v. Monroe County Board of Education</u>, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (student on student sexual harassment), and <u>Flores v. Morgan Hill Unified School Dist.</u>, 324 F.3d 1130,  (9th Cir. 2003) (students' right under Title IX to be free from discrimination on the basis of sexual orientation was clearly established), officials of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT, who at a minimum had authority to address the alleged

harassment alleged herein, and to institute corrective measures on the behalf of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT, had knowledge of the student-on-student harassment and discrimination alleged herein and failed adequately to respond; and, indeed were deliberately indifferent to the harassment and discrimination.  Further, said harassment and discrimination was so severe, pervasive, and objectively offensive that it effectively barred Decedent access to one or more educational opportunities or benefits.

55.    Said deliberate indifference caused Decedent "'to undergo harassment or make her liable or vulnerable to it,'" Stanley v. Trustees of California State University, 433 F.3d 1129, 1137 (9th Cir. 2006) (quoting Davis Next Friend Lashonda D. V. Monroe County Board Of Education, 526 U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

56.    Moreover, the response of Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT to the sexually harassing and discriminatory conduct alleged herein was, "'clearly unreasonable in light of the known circumstances,'" Oden v. Northern Marianas College, 440 F.3d 1085, 1089 (9th Cir. 2006) (quoting Davis Next Friend Lashonda D. V. Monroe County Board Of Education, 526 U.S. 629, 648, 119 S.Ct. 1661, 1674, 143 L.Ed.2d 839 (1999)), cert. denied, 127 S.Ct. 108, 166 L.Ed.2d 32 (2006)).

57.    As a result, said acts, omissions and conduct are actionable against Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT under 20 U.S.C. § 1681 – 1688, pursuant to the decisions in, inter alia, Davis Next Friend Lashonda D. V. Monroe County Board Of Education, 526 U.S. 629, 633, 119 S.Ct. 1661, 1666, 143 L.Ed.2d 839 (1999).

58.    As an actual, direct, proximate and legal result of the wrongful conduct of Defendants, and each of them, alleged herein, Decedent incurred, and Plaintiff is entitled to recover, general and special damages, including but not limited to severe emotional injuries and distress, medical expenses, and significant educational detriment.

59.     As an actual, direct, proximate and legal result of the wrongful conduct of Defendants, and each of them, alleged herein, Decedent was forced to stop attending school for his own safety.  As a result, Decedent suffered severe educational detriment.

60.     Plaintiff is entitled to recover her attorneys' fees from Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT pursuant to 20 U.S.C. §§ 1681 - 1688, and 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

**Violation of Decedent's Rights under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and <u>Fitzgerald v. Barnstable School Committee</u>, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009).**

**[Against Defendants SUSAN ORTEGA and MR. KAMINSKY, in their individual capacities only.]**

61.     Plaintiff realleges and incorporates by reference paragraphs 1 through 51, and 53 through 60, inclusive, as though fully set forth herein.

62.     Plaintiff WENDY WALSH asserts this cause of action in her capacity as the successor in interest of Decedent SETH WALSH.

63.     In engaging in and performing the acts, omissions and conduct alleged above, the individual Defendants performed acts, omissions and conduct under color of state law that discriminated against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment, and such discrimination was either intentional or occasioned by

deliberate indifference.  Said acts, omissions and conduct are actionable under 42 U.S.C. § 1983 pursuant to the decisions in, <u>inter alia</u>, <u>Fitzgerald v. Barnstable School Committee</u>, 555 U.S. 246, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009), <u>Flores v. Morgan Hill Unified School District</u>, 324 F.3d 1130, 1135 (9th Cir. 2003), and <u>Michelle M. v. Dunsmuir Joint Union School District</u>, 2006 WL 2927485, at *6 (E.D. Cal. 2006).


64.     In addition, in engaging in and performing the acts, omissions and conduct alleged above, Defendants DOES 1 through 100, inclusive, performed acts, omissions and conduct under color of state law that deprived Decedent of his rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 - 1688, and such discrimination was either intentional or occasioned by deliberate indifference.  Said acts, omissions, and conduct are actionable under 42 U.S.C. § 1983 pursuant to the decisions in, <u>inter alia</u>, <u>Fitzgerald v. Barnstable School Committee</u>, ___ U.S. ___, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009), <u>Cartwright v. Regents of University of California</u>, 2009 WL 2190072, at *6 - *7 (E.D. Cal. 2009), <u>Padula v. Morris</u>, 2009 WL 772801, at *2 (E.D.Cal. Mar 18, 2009), <u>Annamaria M v. Napa Valley Unified School Dist.</u>, 2006 WL 1525733, at *7 (N.D. Cal. 2006), <u>O.H. v. Oakland Unified School Dist.</u>, 2000 WL 33376299, at *15 (N.D. Cal. 2000), <u>Nicole M. By and Through Jacqueline M. v. Martinez Unified School Dist.</u>, 964 F.Supp. 1369, 1379-1381 (N.D. Cal. 1997), and <u>Oona R.-S. by Kate S. v. Santa Rosa City Schools</u>, 890 F.Supp. 1452, 1461-1462 (N.D. Cal. 1995), <u>see</u> <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 284, 122 S.Ct. 2268, 2275,153 L.Ed.2d 309 (2002) ("We have recognized, for example, that Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights because those statutes are phrased 'with an unmistakable focus on the benefited class.'"), <u>Communities for Equity v. Michigan High School Athletic Ass'n</u>, 459 F.3d 676, 691 (6th Cir. 2006), <u>Delgado v. Stegall</u>, 367 F.3d 668, 675 (7th Cir. 2004), <u>Crawford v. Davis</u>, 109 F.3d 1281, 1284 (8th Cir. 1997), <u>Seamons v. Snow</u>, 84 F.3d 1226, 1234 (10th Cir. 1996).

65.     As an actual, direct, proximate and legal result of the wrongful conduct of Defendants, and each of them, alleged herein, Decedent incurred, and Plaintiff is entitled to recover, general and special damages, including but not limited to severe emotional injuries and distress, medical expenses, and significant educational detriment.

66.     The aforementioned conduct of the individual Defendants, was done maliciously, oppressively and with an intent to injure Decedent and/or in conscious disregard for the rights and safety of Decedent, such that an award of exemplary and punitive damages should be imposed against said individual Defendants in an amount to be proven at trial.

67.     Plaintiff is entitled to recover her attorneys' fees pursuant to 42 U.S.C. §§ 1983, 1988.

## THIRD CAUSE OF ACTION

**Violation of Defendants of Plaintiff's own rights under the First and Fourteenth Amendments to the United States Constitution to a familial relationship and companionship with Decedent, resulting in the death of Decedent and the termination of said relationship, pursuant to 42 U.S.C. §§ 1983, 1988.**

**[Against Defendants SUSAN ORTEGA and MR. KAMINSKY, in their individual capacities only.]**

68.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 51, 53 through 60, and 62 through 67, inclusive, as though fully set forth herein.

///

///

69.     Plaintiff WENDY WALSH asserts this Third Cause of Action for the violation by Defendants of her own rights under the First and Fourteenth Amendments to the United States Constitution to a familial relationship and companionship with Decedent pursuant to 42 U.S.C. § 1983, in her individual capacity.

70.     In engaging in the actions alleged above, Defendants, and each of them, were deliberately indifferent to, or acted with reckless disregard of, and were deliberately indifferent to, Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution to a familial relationship and companionship with Decedent, resulting in the death of Decedent and the termination of said relationship.

71.     As a direct and proximate result of the wrongful acts and omissions of Defendants and each of them, as alleged hereinabove, Defendants have deprived Plaintiff of the life of Decedent.   Thus, Plaintiff is entitled to recover wrongful death damages for the loss of: (a) the value of the financial support Decedent would have contributed to Plaintiff; (b) the loss of gifts or benefits that Plaintiff would have expected to receive from Decedent; (c) funeral and burial expenses; (d) the reasonable value of household services that Decedent would have provided; and (e) the loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

72.     The aforementioned conduct of the individual Defendants was done maliciously, oppressively and with an intent to deprive Plaintiff of her right to a familial relationship with the Decedent, such that an award of exemplary and punitive damages should be imposed against said individual Defendants in an amount to be proven at trial.

///

///

## FOURTH CAUSE OF ACTION

**Violation Of The Unruh Civil Rights Act, California Civil Code § 51, And/Or California Civil Code § 51.5.**

**[Against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.]**

73.     Plaintiff realleges and incorporates by reference paragraphs 1 through 51, 53 through 60, 62 through 67, and 69 through 72, inclusive, as though fully set forth herein.

74.     Plaintiff WENDY WALSH asserts this cause of action in her capacity as the successor in interest of Decedent SETH WALSH

75.     Pursuant to the decisions in, <u>inter alia</u>, <u>Davison ex rel. Sims v. Santa Barbara High School Dist.</u>, 48 F.Supp.2d 1225, 1232-33 (C.D. Cal. 1998) (Moreno, J.); <u>Nicole M. By and Through Jacqueline M. v. Martinez Unified School Dist.</u>, 964 F.Supp. 1369, 1388 (N.D.  Cal. 1997); <u>Doe By and Through Doe v. Petaluma City School Dist.</u>, 830 F. Supp. 1560, 1581-82 (N.D. Cal. 1993); <u>Sullivan By and Through Sullivan v. Vallejo City Unified School Dist.</u>, 731 F. Supp. 947, 952 (E.D. Cal. 1990); <u>see</u> Analysis of SB 612 for the Senate Floor dated August 9, 1994; <u>California Civil Practice Civil Rights Litigation</u>, § 10:6 (Thomson/West 2006), Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is a "business establishment" within the meaning of the Unruh Act, California Civil Code § 51 and California Civil Code § 51.5.

76.     In engaging in and performing the acts, omissions and conduct alleged above, and satisfying the test set forth in, <u>e.g.</u>, <u>Davison ex rel. Sims v. Santa Barbara High School Dist.</u>, 48 F.Supp.2d 1225, 1232-33 (C.D. Cal. 1998) (Moreno, J.); <u>Nicole M. By and</u>

<u>Through Jacqueline M. v. Martinez Unified School Dist.</u>, 964 F.Supp. 1369, 1388 (N.D. Cal. 1997); <u>Doe By and Through Doe v. Petaluma City School Dist.</u>, 830 F. Supp. 1560, 1581-82 (N.D. Cal. 1993); <u>Sullivan By and Through Sullivan v. Vallejo City Unified School Dist.</u>, 731 F. Supp. 947, 952 (E.D. Cal. 1990), Defendants violated, or aided or incited a denial, or made a discrimination or distinction contrary to, the Unruh Act, California Civil Code § 51, and/or California Civil Code § 51.5.

77.     In engaging in and performing the acts, omissions and conduct alleged above, Defendants DOES 1 through 100, inclusive, aided or incited a denial, or made a discrimination or distinction contrary to the Unruh Act, California Civil Code § 51 and California Civil Code § 51.5, and are therefore liable for said acts, omissions and conduct pursuant to California Civil Code § 52(a).

78.     As an actual, direct, proximate and legal result of the wrongful conduct of Defendants, and each of them, alleged herein, Plaintiff incurred, and is entitled to recover, general and special damages.

79.     Pursuant to California Civil Code §§ 51, 51.5, 52(a), Plaintiff is entitled to recover from Defendants, and each of them, Decedent's actual damages, and any amount that may be determined by a jury up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the Court in addition thereto.

80.     Defendants DOES 1 through 100, inclusive, are statutorily liable pursuant to California Government Code § 820 for the damages and injuries to Plaintiff caused by their negligent conduct.

81.     Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is statutorily liable pursuant to California Government Code § 815.2 for the negligent conduct of Defendants DOES 1 through 100, inclusive.

## FIFTH CAUSE OF ACTION

**Negligence pursuant to California Government Code §§ 815.2, 815.6, 820.**

**[Against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.]**

82.     Plaintiff realleges and incorporates by reference paragraphs 1 through 51, 53 through 60, 62 through 67, 69 through 72, and 74 through 81, inclusive, as though fully set forth herein.

83.     Plaintiff WENDY WALSH asserts this cause of action in her capacity as the successor in interest of Decedent SETH WALSH

84.     Defendants had a duty to take all reasonable steps to protect their students, including Decedent.

85.     In engaging in and performing the acts, omissions and conduct alleged above, Defendants negligently breached their duty to take all reasonable steps to protect Decedent.

86.     Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive, are liable for their breach of duty pursuant to California Government Code § 820(a).

87.   Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is liable for the negligent conduct of Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive, pursuant to California Government Code § 815.2(a).

88.   In addition, in engaging in and performing the acts, omissions and conduct alleged above, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT failed to perform one or more mandatory duties, within the meaning of California Government Code § 815.6, including but not limited to:

(a)   its mandatory duty to prevent student-on-student harassment in violation of Plaintiff's rights under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 – 1688;

(b)   its mandatory duty to protect students from discrimination and harassment, pursuant to the Sex Equity in Education Act, codified collectively at California Education Code §§ 221.5 – 231, when considered in conjunction with the entire chapter on "Educational Equity," see California Education Code §§ 200 through 283;

(c)   its mandatory duty to protect students from harassment pursuant to the Unruh Civil Rights Act, California Civil Code § 51, and California Civil Code § 51.5;

(d)   its mandatory duty to protect students generally, pursuant to Article I, Section 28(c) of the California Constitution; and

(e)   its mandatory duty to protect students generally, under California Education Code § 44807 and California Code of Regulations, Title 5, §

5552.  See <u>M.W. v. Panama Buena Vista Union School Dist.</u>, 110 Cal.App.4th 508, 520-521, 1 Cal.Rptr.3d 673, 681-682 (5th Dist. 2003).

89.     As an actual, direct, proximate and legal result of the wrongful conduct of Defendants, and each of them, alleged herein, Decedent incurred, and Plaintiff is therefore entitled to recover, general and special damages.

## <u>SIXTH CAUSE OF ACTION</u>
### Wrongful Death under California law.

### [Against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.]

90.     Plaintiff realleges and incorporates by reference paragraphs 1 through 51, 53 through 60, 62 through 67, 69 through 72, 74 through 81, and 83 through 89, inclusive, as though fully set forth herein.

91.     Plaintiff WENDY WALSH asserts this cause of action for Wrongful Death Under California Law in her individual capacity pursuant to California Code of Civil Procedure § 377.60.

92.     As alleged above, on the afternoon of on or about September 19, 2010, as an actual, legal and proximate result of **<u>all</u>** of the harassment alleged herein, and as an actual, legal and proximate result of **<u>all</u>** of the intentional, reckless, deliberately indifferent, negligent and other wrongful acts and omissions of Defendants, and each of them, alleged herein, Decedent hanged himself from a tree. Decedent was discovered and cut down by

his mother and his younger brother.  After being in a coma for over a week, Decedent died on or about September 28, 2010.

93.     Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive, are liable pursuant to California Government Code § 820(a).

94.     Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is liable for the negligent conduct of Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive, pursuant to California Government Code § 815.2(a).

95.     In addition, in engaging in and performing the acts, omissions and conduct alleged above, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT failed to perform one or more mandatory duties, within the meaning of California Government Code § 815.6.

96.     For the reasons alleged above and incorporated herein by reference, Defendants, and each of them, are responsible for the wrongful death of Decedent under California law. Thus, Plaintiff is entitled to recover wrongful death damages for the loss of: (a) the value of the financial support Decedent would have contributed to Plaintiff; (b) the loss of gifts or benefits that Plaintiff could have expected to receive from Decedent; (c) funeral and burial expenses; (d) the reasonable value of household services that Decedent would have provided; and (e) the loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

///

///

## <u>SEVENTH CAUSE OF ACTION</u>

### Bystander Emotional Distress under California law.

### [Against Defendants TEHACHAPI UNIFIED SCHOOL DISTRICT, SUSAN ORTEGA, and MR. KAMINSKY.]

97.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 51, 53 through 60, 62 through 67, 69 through 72, 74 through 81, 83 through 89, and 91 through 96, inclusive, as though fully set forth herein.

98.     Plaintiffs WENDY WALSH and Sh.W. assert this Seventh Cause of Action for Bystander Emotional Distress Under California Law in their individual capacities.

99.     As alleged above, on the afternoon of on or about September 19, 2010, as an actual, legal and proximate result of **<u>all</u>** of the harassment alleged herein, and as an actual, legal and proximate result of **<u>all</u>** of the intentional, reckless, deliberately indifferent, negligent and other wrongful acts and omissions of Defendants, and each of them, alleged herein, Decedent hanged himself from a tree. Decedent was discovered and cut down by his mother and his younger brother.  After being in a coma for over a week, Decedent died on or about September 28, 2010.

100.   Plaintiffs were present at the scene of the injury when it occurred and were aware that Decedent was being injured.  As alleged above, Plaintiff WENDY WALSH witnessed, saw and perceived harassment of Decedent.  In addition, Plaintiffs were present, witnessed, saw and perceived Decedent hanging from Decedent's neck, choking, while Decedent: (a) was still alive; and (b) before Decedent was cut down.

101.   Plaintiffs suffered serious emotional distress.

102.   Defendants' conduct was a substantial factor in causing Plaintiffs' serious emotional distress.

103.   Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT is liable for the negligent conduct of Defendants SUSAN ORTEGA, MR. KAMINSKY, and DOES 1 through 100, inclusive, pursuant to California Government Code § 815.2(a).

104.   In addition, In engaging in and performing the acts, omissions and conduct alleged above, Defendant TEHACHAPI UNIFIED SCHOOL DISTRICT failed to perform one or more mandatory duties, within the meaning of California Government Code § 815.6.

## **PRAYER**

WHEREFORE, Plaintiffs seek damages as follows:

(1)    General damages.

(2)    Special damages.

(3)    Medical expenses.

(4)    Wrongful death damages for the loss of: (a) the value of the financial support Decedent would have contributed to Plaintiff(s); (b) the loss of gifts or benefits that Plaintiff(s) could have expected to receive from Decedent; (c) funeral and burial expenses; (d) the reasonable value of household services that Decedent would have provided; and (e) the loss

of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

(5)     With regard to the claim under the Unruh Civil Rights Act, California Civil Code § 51, and/or California Civil Code § 51.5, Decedent's actual damages, and any amount that may be determined by a jury up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the Court in addition thereto, pursuant to California Civil Code §§ 51, 51.5, 52(a).

(6)     Punitive and exemplary damages against the individual defendants.

(7)     Attorneys' fees.

(8)     Costs of suit incurred herein.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED:  April 27, 2012                    RODRIGUEZ & ASSOCIATES


By:  /s/ John A. Kawai                    /
       JOHN A. KAWAI, ESQ.
Attorneys for Plaintiff WENDY WALSH, individually and as Successor-in-Interest to SETH WALSH, Deceased; and Plaintiff Sh.W., a minor, by his Guardian ad Litem, WENDY WALSH